Paul Reiner STEVENS, Respondent,

v.

Kamala Rae STEVENS, Appellant.

No. WD 54825.

Missouri Court of Appeals, Western District.

Oct. 13, 1998.

Bruce A. Bailey, Warrensburg, for appellant.

Kareń M. Hunt, Guardian ad Litem Richard P. Beard, Sedalia, for respondent.

Before ELLIS, P.J., LOWENSTEIN and RIEDERER, JJ.

RIEDERER, Judge.

This appeal is from a judgment of dissolution of marriage. Appellant mother claims that the trial court erred because it awarded custody of the couple's fifteen month-old to the father, Paul Stevens, the Respondent. Appellant also claims the trial court abused its discretion in awarding fees to the guardian ad litem. We affirm.

**Procedural and Factual History**

Appellant and Respondent were married on June 9, 1990. The couple separated on February 27, 1996. Following the separation, Appellant moved into her parent's home in Warrensburg, Missouri. The couple's daughter, Lauren Rae Stevens, was born on April 23, 1996. On July 17, 1996, Respondent filed a petition for dissolution, in which he requested joint custody with Appellant having primary physical custody of the child. On August 30, 1996, a hearing was held in which Appellant received temporary physical custody of the child, and Respondent was ordered to pay temporary child support of $373.00 per month and temporary maintenance of $100.00 per month to Appellant.

The dissolution of marriage hearing was held on November 13, 1996. At the hearing, Respondent agreed that Appellant should have primary physical custody of the child, and that he should be granted specific visitation. The "order of dissolution" begins, "Now on this 13 th day of November 1996", and the docket entry of that day recites the content of the order. However, the date, handwritten, next to the judge's signature at the end of the "order" is "1–13–97." Further, the clerk's stamp shows 1–13–97 as the "date filed," even though no docket entry on that date was made to that effect.

In the interim, on December 27, 1996, Respondent married Cartha Stevens. Since a "judgment" had not been entered on November 13, 1996, Appellant filed a motion to reopen evidence and suggestions in support on January 2, 1997. On January 13, 1997, the trial court may have filed the dissolution "order," but did not rule on Appellant's mo-

tion. Appellant then retitled and filed a motion to reopen, correct and amend judgment on January 15, 1997. In the motion, Appellant alleged that Respondent neglected the child during visitation, had a history of inflicting physical abuse on other persons, and that a continuation of unsupervised visitation would endanger the child's physical health and/or impair her emotional development. On January 21, 1997, Appellant filed a notice of a hearing on this motion for February 10, 1997. On February 10, 1997, the court directed both Appellant and Respondent to file affidavits the next day. On February 11, 1997, both parties filed affidavits. Appellant's affidavit alleged that Respondent neglected the child during visitation, had a history of inflicting physical abuse on other persons, and that Respondent had told her that his girlfriend was a "believer and practitioner of witchcraft." Respondent's affidavit stated that Appellant had "fabricated and deliberately misled [the] Court regarding the care and condition of the minor child at the conclusion of each of the three visits that [he] had with the child," that Appellant and her family have interfered considerably with his visitation rights and that Appellant's other allegations against him were untrue.

After receiving the affidavits, the court sustained Appellant's motion to re-open the case and set aside the prior decree as to custody and visitation and ordered the parties to appear at a hearing on February 19, 1997. The docket entry for February 11, 1997 reads in part: "Court sustains Respondent's motion to re-open case and set aside prior Decree as to custody and visitation. Court amends caption to 'Judgment of Dissolution;' except as to custody and visitation judgment to remain in effect." At the hearing on February 19, 1997, the trial court ordered Respondent unsupervised visitation each Saturday from 9:00 a.m. to 7:00 p.m. On February 24, 1997, Respondent filed a motion to amend judgment, claiming Appellant and her family had interfered with his visitation rights. On February 28, 1997 the trial court ordered both Appellant and Respondent to deposit $1,000 each toward guardian ad litem fees, and on March 17, 1997, appointed Karen Hunt as a guardian ad litem.

The trial court then held a hearing on July 31, 1997, to determine the issues of custody and visitation. The guardian ad litem recommended joint legal custody and primary physical custody with Respondent father. The guardian ad litem based her recommendations on her findings that Appellant greatly interfered with the visitation and relationship between Respondent and the child. The guardian ad litem was also concerned with the child's mental health, welfare and development. The trial judge then stated that the court's observations from hearing the evidence were essentially the same as the recommendation made by the guardian ad litem. The trial judge went on to say, "I think the mother has made substantial efforts to alienate the father from the child by denying and preventing visitation. I think the allegations of the [Appellant's] affidavit are essentially unsubstantiated. I think there is recklessness and misstatement in that affidavit." The trial court's judgment entry order of dissolution ordered the immediate transfer of physical custody to Respondent. The trial court further ordered the guardian ad litem to be paid the $2,000.00 fee deposit, and that the balance of money be paid by Appellant.

## I.

Appellant claims that the trial court erred because its judgment was against the weight of the evidence and there was no substantial evidence to support it in that the evidence showed that the best interests of the child would be served by granting her custody and because she did not substantially interfere with Respondent's visitation.

### A. Standard of Review

This court will affirm the trial court's decision unless it is not supported by substantial evidence, it is against the weight of the evidence or it erroneously declares or applies the law. *McCreary v. McCreary*, 954 S.W.2d 433, 438–39 (Mo.App.1997). We view the evidence in the light most favorable to the trial court's decision. *Id.* at 439. Since the trial court is in the best position to weigh the evidence and render a judgment, the judgment will be affirmed under any reasonable theory supported by the evidence.

*Id.* In child custody proceedings, the determination of the trial court is given greater deference than in other cases. *Cornell v. Cornell*, 809 S.W.2d 869, 873 (Mo.App.1991).

### B. Appellant Interfered With Respondent's Visitation

The trial court made only one finding in its judgment decree: "Respondent testified that she has no fear of abuse of the minor child by the father and that she no longer objects to unsupervised visitation." The court then decreed "that the Court makes immediate transfer of physical custody to Petitioner effective this date." Since the trial court made no findings bearing on custody, we will sustain the judgment relating to custody if it can be sustained under any theory. *Morris v. Morris*, 951 S.W.2d 739, 742 (Mo.App.1997). Factors the court is required to consider in determining custody are set forth in § 452.375.2, which provides in part: "(6) The needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;" and "(8) Which parent is more likely to allow the child frequent and meaningful contact with the other parent."

The record is replete with incidents in which Appellant sought to control, alter and limit Respondent's court-ordered visitation. Furthermore, if a custodial parent interferes with court ordered visitation, that interference is relevant in determining "the ability and the willingness of parents to perform their functions," and on determining "which parent is more likely to allow the child frequent and meaningful contact with the other parent." "A trial court can consider a custodial parent's interference with the visitation rights of the non-custodial parent in determining a child's welfare." *Lindell v. Coen*, 896 S.W.2d 525, 528 (Mo.App.1995).

The evidence viewed in the light most favorable to the judgment is as follows. *McCreary*, 954 S.W.2d 433, at 439. Prior to the dissolution of the marriage, Appellant suggested to Respondent that he should not be allowed overnight visits with the child

until the child turned five, although Appellant testified she realized that would be unrealistic. After the "final hearing" of dissolution of the marriage in November 1996, when Respondent was to begin weekend visits with the child, Appellant discouraged Respondent from taking the child out of her home overnight. Appellant asked Respondent to take it slow and visit the child at her home instead. In November of 1996, Respondent asked to take the child from the Tuesday before Thanksgiving until the following Sunday. Appellant told Respondent that she did not think the child was prepared for that. Respondent did not take the child for Thanksgiving. In December of 1996, Appellant testified that her father had a discussion with Respondent in which the father stated that he thought Respondent should slow down visitation with the child, in order to give the child time to get to know him better. Respondent testified that the father had talked to him about not having weekend visitation.

The evidence is that Appellant then escalated her activity from verbal dissuasion to interference. Respondent was also scheduled to have visitation on Christmas 1996, and was scheduled to have a weekend visit starting on December 27. Respondent told Appellant he planned to pick up the child on Christmas day and keep her for the weekend. Appellant, in turn, called Respondent and told him that she did not think that was a good idea. Respondent was allowed visitation with the child on Christmas day. However, with regard to visitation the following weekend, Appellant thought Respondent should wait and pick the child up for the weekend visitation on Saturday morning instead of Friday evening. Appellant told him that she perceived stress from the child and that she would rather he just take the child for a daytime visit instead. Respondent waited and picked the child up on Saturday morning. After that visit, Appellant testified that she would not allow Respondent to take the child for visitation. She stated that she would allow him to see the child in her home, or take the child to Wal–Mart for a few hours, but she would not allow Respondent to take the child overnight. After Appellant testified that she thereafter did not allow Respondent overnight visitation, the following colloquy occurred:

Q: So you decided on your own to change the Court's order and not allow the father of this child to have visitations as the Court directed him that he could ?

A: Right.

Q: Right?

A: Yes. Yes I did.

Q: Okay.

The court: Was that a yes?

The witness: Yes, I did.

Respondent asked for visitation with the child on January 11. Appellant told him that he could come to her house to see the child, but he could not take her with him. Respondent did not take the child. Respondent called Appellant to ask for visitation for the weekend of January 24 –26. Appellant told him he could come visit the child, but not take her overnight. Respondent did not take the child. Appellant testified that Respondent called the next weekend in January for visitation, and Appellant told him that he could visit the child at her house, but not take her overnight. Respondent did not take the child. It appears from the record that Appellant prevented Respondent from having court-ordered overnight visitation from December 29, 1996, until February 19, 1997, or at least three consecutive overnight visitations.

We find that the trial court's decision was supported by substantial evidence that Appellant interfered with Respondent's visitation rights. The trial court's decision is supported by the testimony of both Respondent and Appellant. There is testimony of the parties supporting a finding that Appellant is not likely to allow the child frequent and meaningful contact with Respondent, pursuant to § 452.375.2(8). On numerous occasions, Appellant discouraged Respondent or outright refused to allow Respondent to take his child for court-ordered weekend visitation. Appellant never wanted Respondent to take the child overnight, and preferred that he visit the child at her home. Appellant allowed visitation to Respondent as she saw fit, rather than follow the trial court order.

■ The trial court's decision is also supported by the guardian ad litem's investigation and report. After an exhaustive investigation, the guardian ad litem reported to the court that she found a great deal of interference with the visitation and relationship between Respondent and the child and that many of the things Appellant told her in the course of her investigation turned out to be untrue. She also stated that custody in the father may be in order if the continuing relationship between both parents is promoted by one and not the other. § 452.375.2(6).[1] "The guardian's principal allegiance is to the court and [her] function is to *advocate* what [she] believes to be the best interests of the children." *McCreary*, 954 S.W.2d 433, at 448. Although the guardian ad litem is not required to make a formal recommendation to the court, it is imperative that the guardian investigate and have input regarding the child's best interests. *Id.* Here, the guardian ad litem fulfilled these obligations, and the trial court was entitled to take her report into account.

We find that the trial court's award of custody to Respondent was based on substantial evidence.

Point I is denied.

## II.

■ Appellant claims that the trial court abused its discretion in awarding $5,530.44 in guardian ad litem fees. The trial court may appoint a guardian ad litem in dissolution cases where custody, visitation, or support of a child is at issue. § 452.423.1. Here, all three issues were present. Section 452.423.4 provides for the payment of the guardian ad litem fees:

The guardian ad litem shall be awarded a reasonable fee for such services to be set by the court. The court, in its discretion, may award such fees as a judgment to be paid by any party to the proceedings or from public funds.

Pursuant to this statute, this court should not disturb the trial court's award of guardian ad litem fees absent an abuse of discretion. *Homfeld v. Homfeld*, 954 S.W.2d 617, 624 (Mo.App.1997). The court is permitted to consider the circumstances requiring the appointment of a guardian ad litem in determining the payment of guardian ad litem fees. *Id.* The record shows that the guardian ad litem was appointed after Appellant filed a motion to reopen, correct and amend judgment and both parties filed affidavits. The guardian ad litem discharged her responsibilities by investigation of these allegations. The trial court determined that the allegations contained in Appellant's motion and affidavit were unfounded. Appellant argues that when the guardian ad litem indicated to the court that she would be satisfied with the $2,000 paid into the court by the parties, the guardian ad litem thereby waived any additional fee amount. Appellant cites no authority for this proposition; we find none. Appellant further argues that the trial court demonstrated animosity towards her by having the guardian ad litem calculate her bill from time records and then assessing the $5,530.44 fee against her. We disagree. The trial court is required to set a reasonable fee. § 452.423.4. Appellant offers no argument that the amount is not reasonable. The trial court did not abuse its discretion in requiring Appellant to pay the guardian ad litem fees. Point II denied.

Judgment affirmed.

All concur.

---

1. All statutory references are to RSMo 1994.