

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION TWO</u>

| | | |
|---|---|---|
| KELLY S. KEEL, | ) | No. ED100282 |
| | ) | |
| Petitioner/Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | |
| | ) | Hon. John N. Borbonus |
| EDWARD W. KEEL, | ) | |
| | ) | |
| Respondent/Respondent. | ) | Filed:    September 2, 2014 |
| | ) | |

<u>Introduction</u>

Kelly S. Keel (Mother) appeals from the trial court's Full and Final Judgment Modifying Family Court Judgment (judgment) entered June 25, 2013.  We affirm.

<u>Factual and Procedural Background</u>

On February 18, 2010, the second marriage of Mother and Edward W. Keel (Father) was dissolved in Oklahoma.  The parties had first married on August 30, 1997; divorced; then remarried on March 23, 2002.  In conjunction with the dissolution, the district court of Comanche County, Oklahoma entered a Joint Child Custody Plan (Custody Plan or Plan) giving the parties joint legal and physical custody of their two children, J., born February 8, 2005, and W., born September 8, 2008, with Mother having primary physical custody.  Pursuant to the Custody Plan, Father had visitation on the first and third weekends of each month from Friday

until Sunday; four weeks in the summer, divided into two fourteen-day blocks of time, and various holiday periods.

The Custody Plan also provides that the parent having physical custody of the children shall have the discretion to decide all routine matters; but both parties shall confer and attempt to jointly decide matters concerning method of discipline, schools, health care, religious instruction, summer camps, church schools, special event trips, travel, and any other area requiring decisions that affect the growth and development of the children.[1]

The Custody Plan provides that to ensure each party's continuing association with the children, "in the event of a time conflict respecting a parent's entitlement to the physical custody of the children, as above provided, both parties shall work together reasonably in advance for alternative times for physical custody, if necessary."

With regard to transportation costs, the Plan provides that Father shall be responsible for 86.9% of all visitation transportation costs to and from Mother's home for the retrieval and return of the children to Mother's home associated with his visitation with the children and Mother shall be responsible for the remaining 13.1% of the visitation transportation costs. The Plan dictates that if the parent entitled to physical custody of the children is to be out of town, that parent shall provide to the other the first opportunity to assume physical custody of the children during the time of such trip.

---

[1] Specifically, the Plan provides:

> Both parties shall confer and attempt to jointly decide the following matters, to wit: (1) the fashion and manner in which the children shall be disciplined; (2) schools (such as which public or private, special courses, etc.) the children shall attend; (3) health care (medical, dental, mental, etc.) the children should receive; (4) religious instruction the children should receive; (5) summer camps, church schools and special event trips the children should attend; (6) travel of the children away from home, including extent, purpose, duration, mode, chaperone(s), etc.; and (7) any other area requiring decisions which affect the growth and development of the children.

The Plan further stipulates that "each party shall be entitled to telephone the children at all reasonable times and the children shall be entitled to telephone their parents at any time. Each party shall be entitled to participate in all birthday, school or extracurricular activities of the children and each party shall keep the other informed of all such events on a regular basis."

The Plan mandates that "each party shall be equally entitled to access and have all medical, hospital, school and all other records of the children and neither party shall inhibit or interfere with such access and, in the event that any doctor, hospital, teacher or other person does not freely grant such access, each party shall take such action as is necessary to cause such access to occur."

Both Mother and Father agreed and signed this Custody Plan.

At the time of the dissolution, the family had lived at Fort Sill in Oklahoma since 2006, as Father was a member of the United States Army. Soon after the entry of the decree in February 2010, Mother relocated with the children to St. Louis, Missouri. In April of 2010, Father was transferred to Fort Hood, Texas, where he waited for pending deployment orders to Iraq. In the summer of 2010, Father met his fiancée, Yanneth.

Father's Motion to Modify

In July of 2011, Father registered the Oklahoma dissolution judgment and Custody Plan as a foreign judgment in the trial court. He also filed a Motion to Modify (motion to modify), alleging Mother was restricting him from reasonable contact with the children, had made unilateral decisions and refused to provide him information about them. Father requested the trial court to modify the judgment to provide longer and more frequent blocks of custody time to Father, provide provisions regarding contact with Father and his family in the event of deployment, and a reduction in child support.

3

Mother's Answer to Motion to Modify

On January 4, 2012, Mother filed her answer to Father's motion to modify and a counter-motion to modify. Mother alleged that Father refused to effectively communicate with her and joint legal custody was no longer workable; Father was inconsistent with his phone contact; Father had chosen not to exercise visitation times with children; and Father's income had increased. Mother requested the trial court to award her sole legal custody; amend the visitation schedule pursuant to her Proposed Parenting Plan which decreased Father's weekday, summer and holiday visitation time; order Father to pay Mother's attorney's fees and 100% of transportation costs for visitation, uncovered medical expenses, education and extraordinary expenses; obligate Father to maintain a life insurance policy in the amount of $1,000,000 for the children; and obligate Father to maintain college savings plans sufficient to cover the cost of tuition and books for four years at the University of Missouri-Columbia.

Father's Motion for Contempt and Motion to Enforce Custody

On May 22, 2012, Father filed a motion for contempt of the Oklahoma decree and Custody Plan, alleging Mother had willfully violated the terms by failing to obey the provision requiring her to pay her 13.1% share of the children's transportation costs; failing to abide by the provision allowing Father first custody of the children by leaving the children with others while traveling out of town rather than giving Father the right to care for the children; making unilateral decisions regarding the children's health and well-being, including medical decisions; and advising Father she would not be consulting with him regarding further medical decisions.

On May 22, 2012, Father also filed a motion to enforce custody, alleging that pursuant to the Oklahoma decree and Custody Plan, Father is to have summer visitation with the children June 15 through June 30 and August 1 through August 15 and pursuant to the judgment, "both

parties shall work together reasonably in advance for alternative times for physical custody, if necessary." Father maintained he notified Mother that he received orders transferring him from his current base in Texas to a new base in Kansas and the time frame in which Father must clear his old base and report to his new base is from June 15 through June 30, and he has no input as to the dates he is assigned to clear a base and report to a new base. Father maintained the children resume school such that it is not in their best interest that he retain custody of them until August 15 but return them to Mother's custody prior to the start of school, so Father requested alternative physical custody times for his summer visitation but Mother has refused to alter the summer period of June 15 through June 30. Father requested an order of the court finding an alternative physical summer custody time for him to have the children for two weeks during the month of July and alter his second two weeks so the children had a weekend prior to going back to school in August.

On May 23, 2012, the trial court issued an order to show cause to Mother as to why she should not be held in contempt of the dissolution judgment and Custody Plan, for the reasons stated by Father in his motion for contempt. The trial court also issued an order that Father shall have summer custody of the children from July 20 through August 12, 2012.

### Father's Amended Motion to Modify and Motion for Guardian ad Litem

On June 29, 2012, Father filed a motion for the appointment of a guardian ad litem (GAL) and his first amended motion to modify. In the motion for GAL, Father alleged a GAL needed to be appointed because of Mother's behavior, behavior which likewise was the basis for the amended motion to modify. In support of both motions, Father specifically claimed Mother had: (1) engaged in a pattern of behavior restricting, limiting and interfering with Father's physical custody times, contact with the children and legal custody rights regarding the children;

5

(2) engaged in a pattern of behavior intentionally designed to ensure Father does not have a frequent, continuing and meaningful relationship with the children; (3) misrepresented information and facts and made disparaging comments about Father directly to the children in an effort to alienate and destroy the relationship between the children and Father; (4) intentionally limited and denied Father's access to medical, educational and developmental information regarding the children as well as instructed others to deny and limit Father's contact and access to the children; (5) told Father she will not consult with Father regarding decisions that affect the children and she will not notify Father of medical appointments for the children; and (6) failed and refused to allow the children reasonable contact with their paternal grandparents, stepsiblings and stepmother and engaged in behaviors intended to negatively impact the relationship between the children and their paternal grandparents, stepsiblings and stepmother. In the motion for GAL, Father contended that Mother's behavior was damaging, detrimental, and emotionally abusive, and would have a lifelong negative impact on the children, and it was in the best interest of the children that the court appoint a GAL. In the amended motion to modify, Father requested the court grant him sole physical custody and order Mother to pay a portion of his attorney's fees.

On July 2, 2012, the court granted Father leave to file his amended motion to modify and granted his motion for GAL. M. Jill Wehmer was appointed as guardian ad litem and entered her appearance in the case on July 11, 2012.

On August 6, 2012, Mother answered the court's order to show cause claiming she was only required to pay "reasonable" transportation costs; she is unemployed so her trips out of town were not "on business" as stipulated in the Custody Plan so she did not have to give Father first option of physical custody while she was out of town; and that he had been in Iraq for

6

twelve months while she scheduled medical appointments for the children and if he was in town he would be able to schedule them as well. Mother also filed her answer to Father's amended motion to modify, essentially denying all of Father's allegations of her noncompliance with the Custody Plan's provisions or of any misconduct with regard to deliberately interfering with Father's physical and legal relationship with his children.

On February 25, 2013, Father filed a motion for preliminary injunction and temporary restraining order to prohibit Dr. Michelle Ruffy's continued psychological treatment of J.

On April 10, 2013, the first day of trial, Mother filed a motion to voluntarily dismiss her own counter-motion to modify, which the trial court denied.

Trial

The trial consisted of six days of testimony: April 10, 12, 15, 16, 27, and May 2, 2013.

On May 2, 2013, J. testified in an in camera hearing. At the conclusion of J.'s testimony, the GAL gave her recommendation and submitted her Proposed Parenting Plan which provided that Father be awarded sole legal custody and sole physical custody, subject to Mother's visitation rights. The GAL testified she believed transferring the children from Missouri to Texas, and to Father, was in the best interest of the children. The GAL testified that, in making her recommendation, she considered the adjustment to a new school, meeting new friends, using new doctors, J.'s prescription medication use, Father's deployment history and the fact there could be another deployment, and the interaction that the children have with their family members in St. Louis including grandparents, aunts and uncles.

After the hearing on the matter was concluded, it was submitted to the trial court with each party granted until May 28, 2013 to submit Proposed Judgments. On June 3, 2013, Mother filed a Request for Findings of Fact and Conclusions of Law, which the trial court denied on

June 4, 2013, noting that pursuant to Rule 73.01,[2] at "no time prior to the introduction of evidence at trial, or even during the introduction of evidence throughout the trial, did either Party make a request on the record or otherwise for findings of fact. Rather, almost a full two months from the commencement of the trial herein … [Mother] filed [Mother's] Request for Findings of Fact and Conclusions of Law."

Judgment

On June 25, 2013, the trial court entered its Judgment, stating that "all fact issues upon which no specific findings are made shall be considered as having been found in accordance with the results reached." The trial court determined a substantial and continuing change had occurred in the circumstances of the children and parents, such that a modification was necessary to serve the children's best interest. The trial court noted, "Mother's testimony through the trial was wholly disingenuous and lacked credibility as to most matters relevant to the Minor Children's custody, including her claimed willingness and intent to encourage and allow Father and the Minor Children, to have a frequent, continuing, and meaningful relationship." It also found "Mother's testimony through the trial was wholly disingenuous and lacked credibility regarding her claimed willingness and intent to allow Father to be equally involved in the decisions and matters that impact the welfare and upbringing of the Minor Children." Further, the court concluded to the extent Mother made any effort to encourage and allow Father and the Minor Children to have a frequent, continuing, and meaningful relationship, or allow Father to be involved in the decisions that impact the welfare of the Minor Children, it was usually self-serving, particularly once the instant litigation was commenced, and often involved the need for intervention by the GAL and/or the parties' attorneys. The trial court found Mother unable and unwilling to meaningfully communicate with Father in a manner that is required so that the

---

[2] All rule references are to Mo. R. Civ. P. 2011.

parties can discuss and jointly reach decisions regarding the welfare of the children. The court also found Mother made numerous decisions that were not in the children's best interest. The trial court determined Father, unlike Mother, will not use an award of sole legal custody to restrict or limit Mother's input or joint involvement; Father will make decisions that are in the best interest of the children, and is more likely than Mother to allow the children frequent, continuing, and meaningful contact with the other parent. The court awarded Father sole legal custody and sole physical custody, subject to Mother's periods of visitation, per the Parenting Plan which was marked as Exhibit A. Each party was ordered to pay his or her own attorney's fees and Mother was ordered to pay the balance of the GAL fees of $16,104.07. Mother was found in contempt for failure to pay Father her share of visitation transportation costs and in contempt of the Oklahoma decree for making unilateral decisions regarding the health and well-being of the children, including but not limited to medical decisions. Neither party filed post-trial motions. This appeal follows.

### Points on Appeal

In her first point, Mother contends the trial court misapplied the law as set forth in Rule 73.01(c) because its judgment does not contain specific findings of fact regarding the factors enumerated in Sections 452.375[3] or 452.410[4] as required.

---

[3] All statutory references are to RSMo 2006.

[4] Section 452.410, titled "Custody, decree, modification of, when" provides:
　　1. Except as provided in subsection 2 of this section, the court shall not modify a prior custody decree unless it has jurisdiction under the provisions of section 452.450 and it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child. Notwithstanding any other provision of this section or sections 452.375 and 452.400, any custody order entered by any court in this state or any other state prior to August 13, 1984, may, subject to jurisdictional requirements, be modified to allow for joint custody in accordance with section 452.375, without any further showing.
　　2. If either parent files a motion to modify an award of joint legal custody or joint physical custody, each party shall be entitled to a change of judge as provided by supreme court rule.

9

In her second point, Mother maintains the judgment is against the weight of the evidence because the trial court indicated at trial and in the judgment that it only considered one of the eight factors set out in Section 452.375; failed to consider whether Father having full physical custody was in the best interests of the children; and awarded Father custody to punish Mother.

In her third point, Mother claims the trial court abused its discretion and misapplied the law in assessing the GAL fees against her, because Father requested the appointment of the GAL; the court failed to consider Mother is unemployed and has no income; and Father is employed and has a yearly income of approximately $100,000.

## Discussion

### Points I and II – Findings of Fact

In her first point, Mother complains the trial court failed to make statutorily required findings in its judgment pursuant to Rule 73.01(c). Rule 73.01(c) and (d) provide:

(c) The court shall render the judgment it thinks proper under the law and the evidence.

If a party so requests, the court shall dictate to the court reporter or prepare and file a brief opinion containing a statement of the grounds for its decision and the method of deciding any damages awarded.

The court may, or if requested by a party shall, include in the opinion findings on the controverted fact issues specified by the party. *Any request for an opinion or findings of fact shall be made on the record before the introduction of evidence at trial or at such later time as the court may allow*.

All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached.

(d) *Except as provided in Rule 78.07(c)*, a party may, but need not, file a motion for new trial or a motion to amend the judgment or opinion, or both, as provided by Rule 78.04.

[Emphasis added.] Rule 78.07(c) provides: "In all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review."

10

The record does not indicate that Mother made a request for findings of fact before the introduction of evidence. Rather, she made a request for findings of fact two months after the conclusion of trial. The trial court denied the request, as it has discretion to do under Rule 73.01(c) when the request is untimely made. It specifically stated in its judgment, "In as much as neither Party filed a request for findings of fact or conclusions of law prior to the introduction of evidence, the Court makes only such findings as it deems necessary to state the grounds for its decision, if any, as required by Rule 73.01(c)." It added, "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the results reached. Mo.R.Civ.P. 73.01(a)(2)."

Also, in contravention of Rules 73.01(d) and 78.07(c), Mother failed to file a motion to amend the trial court's judgment to include statutorily required findings or factual findings. Mother was obligated to file such a post-trial motion to amend to put the trial court on notice of such an alleged error relating to the form or language of the judgment. She did not do so, and thus such an error alleged for the first time on appeal is not preserved. See, Crow v. Crow, 300 S.W.3d 561, 565-66 (Mo.App. E.D. 2009); In re Marriage of Brown, 310 S.W.3d 754, 756 (Mo.App. E.D. 2010); Barker v. Barker, 412 S.W.3d 457, 458-59 (Mo.App. S.D. 2012); Thomas v. Moore, 410 S.W.3d 748, 755 (Mo.App. W.D. 2013).

However, under Point II we set forth the trial court's findings to determine whether they are supported by substantial evidence, an exercise which will decide the issue presented in Point I regardless of its unpreserved status. This examination will also aid in the ultimate decision of whether the trial court considered the transfer of children's custody to Father to be in their best interests and did not do so merely to punish Mother.

11

## Point II – Transfer of Custody

In her second point, Mother contends the trial court erred in transferring sole physical custody of the children to Father because in deciding to do so it considered only one out of the eight factors set forth in Section 452.375, and its decision was against the weight of the evidence and solely designed to punish Mother.

An appellant faces a heavy burden to overturn the trial court's decision relating to an award of child custody. Lindsey v. Lindsey, 336 S.W.3d 487, 494 (Mo.App. E.D. 2011). In the review of an award of custody, we are to presume the trial court considered all the evidence and made its award in the best interest of the children in the absence of specific findings by the trial court because of the trial court's unique position for determining credibility, sincerity, character and other intangibles of witnesses that might not be completely revealed by the record. Lalumondiere v. Lalumondiere, 293 S.W.3d 110, 116 (Mo.App. E.D. 2009).

Additionally, because the trial court has an affirmative duty to determine what is in the best interests of the children, we presume that the custody decision is motivated by what the court believes is best for the children. Lindsey, 336 S.W.3d at 494. We therefore accord a trial court's determination regarding child custody greater deference than in other cases. Flathers v. Flathers, 948 S.W.2d 463, 471 (Mo.App. W.D. 1997). We will not disturb a trial court's custody determination unless we are firmly convinced that the welfare of the children requires some other disposition. Lindsey, 336 S.W.3d at 494.

Section 452.410.1, titled "Custody, decree, modification of, when" provides:

> Except as provided in subsection 2 of this section, the court shall not modify a prior custody decree unless it has jurisdiction under the provisions of section 452.450 and it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child….

12

With regard to change of custody, Section 452.340.7 provides:

> The general assembly finds and declares that it is the public policy of this state that frequent, continuing and meaningful contact with both parents after the parents have separated or dissolved their marriage is in the best interest of the child except for cases where the court specifically finds that such contact is not in the best interest of the child. In order to effectuate this public policy, a court with jurisdiction shall enforce visitation, custody and child support orders in the same manner. A court with jurisdiction may abate, in whole or in part, any past or future obligation of support and *may transfer the physical and legal or physical or legal custody of one or more children if it finds that a parent has, without good cause, failed to provide visitation or physical and legal or physical or legal custody to the other parent pursuant to the terms of a judgment of dissolution, legal separation or modifications thereof.* The court shall also award, if requested and for good cause shown, reasonable expenses, attorney's fees and court costs incurred by the prevailing party.

[Emphasis added.]

In the instant case, the trial court found that since the Oklahoma judgment and Custody Plan, a substantial and continuing change has occurred in the circumstances of the children and parents, such that a modification was necessary to serve the children's best interests. The court found the parties' inability to communicate, cooperate, and make shared decisions concerning their children's welfare makes joint legal custody inappropriate. The court noted that a breakdown of parental communication and cooperation is sufficient legally, in and of itself, to constitute a change of circumstances**.**

As a matter of law, where parents cannot communicate or cooperate and where they cannot share decision-making regarding the welfare of their children, joint custody is improper. McCauley v. Schenkel, 977 S.W.2d 45, 50 (Mo.App. E.D. 1998); Brown v. Brown, 19 S.W.3d 717, 721 (Mo.App. W.D. 2000); Section 452.410.1. "In a joint custody situation, breakdown of parental communication and cooperation is sufficient, in and of itself, to constitute a change in

13

circumstances." Timmerman v. Timmerman, 139 S.W.3d 230, 237 (Mo.App. W.D. 2004);

Hollins v. Hollins, 13 S.W.3d 669, 672 (Mo.App. E.D.2000).

The trial court made the following findings as indicative of the parties' inability and unwillingness to share decision-making regarding the welfare of children. The court determined these findings supported the existence of a breakdown of cooperation and communication between Mother and Father such that joint custody was no longer appropriate, and ultimately sole custody with Father was appropriate.

> [1.] Mother's testimony throughout trial was wholly disingenuous and lacked credibility as to most matters relevant to the Minor Children's custody, including her claimed willingness and intent to encourage and allow Father and the Minor Children to have a frequent, continuing, and meaningful relationship.
> [2.] [T]o the extent Mother made any effort to encourage and allow Father and the Minor Children to have a frequent, continuing and meaningful relationship, it was usually self-serving, particularly once this litigation was commenced, and often involved the need for intervention by the GAL and/or the Parties' attorneys.
> [3.] Mother's testimony throughout trial was also wholly disingenuous and lacked credibility regarding her claimed willingness and intent to allow Father to be equally involved in the decisions and matters that impact the welfare and upbringing of the Minor Children.
> [4.] [T]o the extent Mother made any effort to allow Father to be equally involved in the decisions and matters that impact the welfare and upbringing of the Minor Children it was usually self-serving, particularly once this litigation was commenced, and often involved the need for intervention by the GAL and/or the Parties' attorneys.
> [5.] Mother seems completely oblivious to the inappropriateness and the significant consequences of her actions and behaviors.
> [6.] Mother is simply unable and unwilling to meaningfully communicate with Father in a manner that is required so that the Parties can discuss and jointly reach decisions regarding the welfare of the Minor Children.
> [7.] Mother made numerous decisions that are not in the Minor Children's best interest, including her decision to continue [J.'s] treatment with a psychologist who destroyed documents utilized in treatment, did not return Father's phone calls, did not disclose information about [J.'s] treatment to both parents, and who would not make appropriate accommodations to include both parents in [J's] treatment.
> [8.] Father, unlike Mother, will not use an award of sole legal custody to restrict or limit Mother's input or joint involvement in decision regarding the welfare of the Minor Children.

14

[9.] Father will make decisions that are in the best interest of the Minor Children.

[10.] Father is more likely than Mother to allow the Minor Children frequent, continuing, and meaningful contact with the other parent.

In deciding whether modification of custody would serve the best interests of a child, the trial court must also consider the statutory factors of section 452.375.2. <u>Timmerman</u>, 139 S.W.3d at 237; <u>In re McIntire</u>, 33 S.W.3d 565, 572 (Mo.App. W.D. 2000). Those factors are:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;
(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;
(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;
(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;
(5) The child's adjustment to the child's home, school, and community;
(6) The mental and physical health of all individuals involved, including any history or abuse of any individuals involved. If the court finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;
(7) The intention of either parent to relocate the principal residence of the child; and
(8) The wishes of a child as the child's custodian.

Section 452.375.2.

The trial court in this case states in its Judgment, "In making its determination of the best interest of the Minor Children, this Court must look to the statutory factors set out in Section 452.375. *Hamer v. Nicholas*, 186 S.W.3d 884, 887 (Mo. Ct. App. 2006). Mo. Rev. Stat. § 452.375.2 provides this Court shall consider all relevant factors, including…." The court then

15

goes on to list the eight factors set out above. After setting out the eight factors, the court specifically noted that it considered each one[5]:

> 21. The Court considered the wishes of the Parties as to custody, as well as the proposed Parenting Plans submitted by both Parties and the GAL.
> 22. The Court considered the needs of the Minor Children for a frequent, continuing, and meaningful relationship with both parents and the ability and willingness of both parents to actively perform their functions as parents for the needs of the Minor Children.
> 23. The Court considered the interaction and interrelationship of the Minor Children with both parents, step-parents, step-siblings, half-siblings, extended family, and all other persons of which the Court was made aware who may significantly affect the Minor Children's best interests.
> 24. The Court considered which parent is more likely to allow the Minor Children frequent, continuing and meaningful contact with the other parent.
> 25. The Court considered the Minor Children's adjustment to homes, schools, and community.
> 26. The Court considered the mental and physical health of all individuals involved, including any history of abuse of any individual involved.
> 27. The Court considered the intention of either parent to relocate the principal residence of the Minor Children.

Thus, the court set out the eight factors listed in 452.375.2 and specifically noted that the law required it to consider them and that it did in fact consider them. Contrary to Mother's assertions, the trial court is not required to make a detailed finding on each factor. Lalumondiere, 293 S.W.3d at 113. Rather, sufficient findings on the relevant factors are all that is required. Id.; Speer v. Colon, 155 S.W.3d 60, 62 (Mo.banc 2005) (stating that "[s]ection 452.375.6 does not mandate the need for a written finding on all of the factors listed, but the relevant factors must be detailed").

Out of Section 452.375.2's eight factors, factor eight was considered inapplicable by the trial court due to the children's ages. With regard to factor one, each party wanted custody of the children as is evidenced by the existence of the case itself, to-wit: a change in custody was the main disputed issue; Father petitioned the court to modify the original Custody Plan so that he

---

[5] The court noted that factor eight did not apply because the children were too young to have their wishes as to custody considered and thus it gave it no consideration.

would have sole legal and physical custody due to Mother's abuse of her role of primary physical custodian. Each parent as well as the GAL submitted proposed parenting plans outlining his or her own custody proposals, which are part of the record and were given due consideration by the court. Factors two, three, and four are clearly weighted in favor of Father as the court makes abundantly clear in its recitations of Mother's inability and unwillingness to meaningfully communicate with Father so that they can share decision-making with regard to the children's health, welfare, schooling, medication, doctors and counseling. The court found Mother's decision to continue J.'s treatment with psychologist Dr. Michelle Ruffy, who had destroyed documents used in her treatment of J., did not return Father's phone calls, did not disclose information about J.'s treatment to Father, and who would not make appropriate accommodations to include both parents in J.'s treatment, was not in J.'s best interest. Father had to file a petition for a restraining order and injunction in order to get Mother to stop taking J. to Dr. Ruffy. During the progression of this trial, Father had to file a motion for contempt, a motion to enforce custody and a motion to appoint a GAL, all because of Mother's actions in failing to abide by the provisions of the original Custody Plan, provisions which were mandatory and specifically put in place to ensure that the noncustodial parent maintained a continuous and meaningful relationship with his children and to ensure each party's continuing association with the children. Mother violated almost every one of those provisions, from paying 13.1% of the transportation costs incurred by visitation to making unilateral decisions about the children's school, medication and treatment. Mother overtly sabotaged Father's ability to communicate with the children's school, teachers and doctor by telling them not to speak with Father, share information about the children with Father and to outright lie to Father. Mother left Father's information off forms that asked for the children's father's information. Mother refused to work

17

together reasonably in advance with Father for alternative times for physical custody during summer vacation, to the extent that the court had to intervene to enforce Father's summer custody time with his children. Mother also refused to reasonably work together with Father on other occasions to be flexible about visitation time with the children without good cause or adequate excuse. Mother went out of town on at least two trips without the children without giving Father first opportunity for their custody during that time, in direct violation of the original Custody Plan. The court found Mother's testimony at trial in defense of her actions, when brought to light, disingenuous and lacking credibility. The court did not believe Mother's behavior was likely to change such that anything other than a change of custody was likely to ensure that the children and both parents have a frequent, continuing and meaningful relationship.

With regard to factors five, six, and seven, the trial court made no detailed factual findings as to the parties' mental or physical health, intent to relocate, or the children's adjustment to the home, school, and community. However, the court noted it specifically considered these factors, and the parties' health did not appear from the record to be at issue. Nor did either party mention any intent to relocate in the near future. As to the children's adjustment to home, school and community, the GAL via her testimony *in camera* stated she took note of that factor in making her recommendation that sole legal and physical custody being transferred to Father was in the children's best interest. There was no indication in the record that either child would have difficulty in making the adjustment to a new school and community or Father's home.

Mother opines that the trial court's decision was designed to punish her for her behavior. It is a well-settled principle regarding custody matters that custody is not to be used as a reward or punishment of either parent, but rather it must be based upon the best interests of the child. Smith v. Smith, 75 S.W.3d 815, 826 (Mo.App. W.D. 2002). The tenor and language of the court's judgment is quite critical of Mother's actions and testimony to such a degree that it may seem to be a reasonable deduction that the court was not pleased with Mother's actions and thus the change in custody to Father's favor was to punish her. However, it must be remembered that joint legal and joint physical custody had already been awarded to the parties, with Mother being designated primary physical custodian, by the original Oklahoma decree and Custody Plan. The Custody Plan set out the rules and requirements that the parties had to abide by to maintain a continuous and meaningful association and relationship with their children; the onus of such requirements realistically being on the parent who is designated the primary physical custodian – to not abuse the power that comes with such designation. Mother, in this case, abused it. No one maintains Mother is not a good parent, or that Father is the better parent. However, Section 452.375.4 provides that it is the public policy of this State that frequent, continuing and meaningful contact with both parents is in the best interests of the child. Mother's conduct recurrently thwarted this most important policy and her testimony in the transcript indicates she refuses to recognize or change her behavior in this regard. Accordingly, her actions as such are in direct contravention of the best interests of her children.

Interference by one parent with the other parent's decretal rights is contrary to public policy and society's interest in assuring children frequent and meaningful contact with both parents. In re C.N.H., 998 S.W.2d 553, 557 (Mo.App. S.D. 1999) (further citations omitted). Missouri has traditionally tried to maintain and encourage continued interest, love, and affection

19

between children and noncustodial parents because the link between them in circumstances of divorce, separation, or non-marriage is often uncertain at best. Id. (further citations omitted). Accordingly, the rule has evolved that if one parent interferes with the decretal rights of the other, such interference constitutes a changed condition that may justify and require a modification of custody provisions. Id. Likewise, one parent's efforts to alienate a child from the other parent is also a changed condition that can form the basis for a change in custody. Id.

We conclude that based on the foregoing, the trial court established custody of the children in this case in accordance with their best interests and Missouri's public policy by transferring their physical custody to Father. The trial court made sufficient findings with respect to modifications in custody plans as set out in Section 452.410.1 and Section 452.340.7 as well as the relevant general best interest factors contained in Section 452.375.2. Finally, the trial court's findings are supported by substantial evidence in the record. Accordingly, Mother's arguments are without merit. Points I and II are denied.

### Point III – GAL Fees

Each party paid $5,000 toward the GAL's total fee of $26,104.07, leaving a balance of $16,104.07, which the court assessed against Mother. Mother maintains the trial court abused its discretion in doing so, because Father, not Mother, asked the court for the appointment of the GAL.

Section 452.423.4 provides for the award and payment of GAL fees in custody cases: "The guardian ad litem shall be awarded a reasonable fee for such services to be set by the court. The court, in its discretion, may award such fees as a judgment to be paid by any party to the proceedings or from public funds." Pursuant to this statute, this Court should not disturb the trial court's award of GAL fees absent an abuse of discretion. Stevens v. Stevens, 977 S.W.2d 305,

20

310 (Mo.App. W.D. 1998). Section 452.340.7 also provides generally that "[t]he court shall also award, if requested and for good cause shown, reasonable expenses, attorney's fees and court costs incurred by the prevailing party."

In this case, Father moved for the GAL's appointment. However, it was due to Mother's actions that Father and the court deemed appointment of a GAL necessary. "The court is permitted to consider the circumstances requiring the appointment of a guardian ad litem in determining the payment of guardian ad litem fees." Stevens, 977 S.W.2d at 310.

Furthermore, Father was the prevailing party in this case. And even so, the trial court still required Father to pay his own attorney's fees. Although Mother claims she has no income because she is unemployed, the court found she has a college education and the ability to work full-time, but has not sought employment since the entry of the original judgment of dissolution. Therefore, the trial court used the income imputed to Mother at the time of the Oklahoma decree in the amount of $1,257 per month. Father's monthly income was found to be $9,281.

The court was entitled to assess the balance of the GAL's fees and expenses against Mother because Mother's actions necessitated the GAL's intervention; Father was the prevailing party; and the assessment of such fees is within the trial court's discretion. Further, Mother was found to be in contempt of the trial court's show cause order issued in response to Father's motion for contempt for Mother's failure to pay her share of transportation expenses, and in contempt of the original Oklahoma judgment's Custody Plan by intentionally violating its terms. The trial court found Mother has the means to pay the balance, and Mother failed to present evidence to excuse her deliberate noncompliance with the underlying judgment or the prior decree. Accordingly, we find the trial court did not abuse its discretion in assessing the unpaid

21

balance of the GAL's total fees against Mother for good cause shown.  Section 452.423.4;

Section 542.340.7.  Point III is denied.

Conclusion

The trial court's judgment is affirmed.[6]

_Sherri B. Sullivan_

Sherri B. Sullivan, P.J.

Mary K. Hoff, J., and Philip M. Hess, J., concur.

---

[6] Respondent's Motion to Correct and Redact Record on Appeal is granted to the extent it identifies exhibits filed with this Court that were not part of the record at trial, and to any extent otherwise, is denied.
  Petitioner's Motion to Strike Post-Oral Argument Filing is denied.