**Melissa Ann (Lindenbusch) MOYERS, Appellant,**

v.

**Martin Albert LINDENBUSCH, Respondent.**

**WD 80588**

Missouri Court of Appeals, Western District.

OPINION FILED: October 24, 2017

David G. Bandré, Jefferson City, MO, Attorney for Appellant.

Gaylin Rich Carver, Jefferson City, MO, Attorney for Respondent.

Before Division One: Cynthia L. Martin, Presiding Judge, and James Edward Welsh and Karen King Mitchell, Judges

Karen King Mitchell, Judge

Melissa A. Moyers (Mother) appeals the judgment of the Circuit Court of Cole County, Missouri, granting the Motion to Modify Judgment and Decree of Dissolution filed by Martin A. Lindenbusch (Father). The trial court modified the original decree by awarding sole legal custody and primary placement of the parties' three minor children to Father but leaving the parents with joint physical custody of the children. On appeal, Mother claims the trial court erred: (1) in determining that there was substantial evidence on which to conclude that the modification was in the best interests of the children and (2) in finding that Mother was engaged in a "po-

lyamorous or polygamous"[1] relationship. We affirm.

## Background[2]

The parties married on May 17, 2003, in Cole County, Missouri. Three children were born to the marriage: Andrew Xavier Lindenbusch, born April 28, 2004; Meghan Elizabeth Lindenbusch, born December 21, 2005; and Annika Elisé Lindenbusch, born May 22, 2008. In 2012, the parties filed cross-petitions for dissolution of marriage in the Circuit Court of Cole County, Missouri. On February 20, 2013, the trial court held a hearing on the petitions. Following the hearing, the court made a docket entry dissolving the parties' marriage and instructing the parties to submit proposed judgments and parenting plans. While the case was pending, Mother filed a Motion to Re-Open the Record. The court granted the motion and set the matter for a second hearing. The parties subsequently notified the court that they had reached an agreement resolving the disputed issues.

On June 14, 2013, the trial court entered a Judgment and Decree of Dissolution of Marriage, awarding the parties joint legal and physical custody of the children in accordance with the parties' proposed Joint Parenting Plan, which the court found to be in the best interests of the children. According to the Joint Parenting Plan, Mother was permitted to relocate the children to Colorado, and Father was granted specific periods of parenting time during holiday breaks and summers.

Mother and the children moved to Rye, Colorado, in July 2013. There, they lived with Kenneth Moyers (Ken), his wife Stephanie Moyers (Stephanie), and Ken and Stephanie's three children.[3] Ken and Stephanie divorced in September 2013, although they continued to share the same house. Mother and Ken were married in October 2013, and they later had a son together.

By letter dated April 15, 2016, Mother notified Father of her intention to relocate the children to the Austin, Texas area on or around June 15, 2016. Mother identified Ken's desire to change employment as the primary reason for the move, although she noted that, as of the date of the letter, he had not yet found employment. Mother subsequently sent Father a letter, dated May 12, 2016, in which she provided her new residential address in Texas, effective June 1, 2016.

On May 31, 2016, Father filed a Motion to Prohibit Petitioner's Proposed Relocation of the Residence of the Minor Children and a Motion to Modify Custody, which Father later amended on June 7, 2016. In his Motion, Father requested sole legal and physical custody of the children with reasonable rights of visitation in favor of Mother. On October 4, 2016, Father moved for the appointment of a guardian ad litem (GAL), which the trial court granted.

---

1. At trial and in their briefs, the parties used these terms, as well as "sister wives" and "plural marriage," interchangeably and often without regard to their literal meaning. We determine that there is substantial evidence, separate and apart from evidence of a "polyamorous or polygamous" relationship, to support the trial court's judgment. Therefore, we do not attempt to clarify the parties' use of these terms.

2. We "accept as true the evidence and inferences ... favorable to the trial court's decree and disregard all contrary evidence." *Ivie v. Smith*, 439 S.W.3d 189, 200 (Mo. banc 2014) (quoting *Zweig v. Metro. St. Louis Sewer Dist.*, 412 S.W.3d 223, 231 (Mo. banc 2013)).

3. To avoid confusion, we will refer to Ken and Stephanie Moyers by their first names. No disrespect is intended.

On January 25, 2017, the trial court conducted a bench trial, which lasted the better part of a day and included testimony from Mother, Father, Ken, and the GAL. Father intended to remain in the Jefferson City area and re-enroll the children in St. Joseph Catholic School in Jefferson City, which they had attended before the parties' dissolution. Both Father and Mother have extended family in Missouri, and Father indicated that he would allow the children to visit Mother's family.

Around the time of the dissolution, Father lost his job due to a DWI conviction. Father agreed to allow Mother to relocate to Colorado with the children because she represented that she had received a written job offer from Solo Sky Ranch in Rye, Colorado, at a yearly salary of $60,000. But Mother was never actually employed by Solo Sky Ranch, as there was no job for her there. Ken owns Solo Sky Ranch, and Mother's motivation for moving to Colorado was to marry him. The written job offer Mother received was signed by Stephanie, using her middle and maiden name. According to Ken, the job offer was "one piece of the puzzle" that would allow Mother to relocate to Colorado with the children.

After moving to Colorado, Mother interfered with Father's attempts to communicate with the children. Mother refused to load Skype on her son's iPad so he could communicate with Father; her stated reason being that she had paid for the iPad. Mother cancelled her son's email account when she discovered that Father was communicating with the son via e-mail. And Mother often did not answer her cell phone when Father called to speak to the children. On at least one occasion, Mother recorded a telephone call between Father and the children, and on other occasions she had the children talk to Father on speaker phone so she could listen to their conversations. She also interfered with Father's ability to participate meaningfully in one child's First Communion. Ken threatened to call the police if Father showed up at the house to see the children. Mother denied Father's request to visit with the children in Colorado on at least one occasion, and she interfered with his plans to spend time with the children in Missouri on another.

Mother made it difficult for the parties to co-parent. She refused to cooperate with Father to facilitate exchanges of the children, including dropping the children off a day early without prior notice to Father, demanding he return the children a day early, and refusing to allow Father to change the children's return flights to a more convenient time. Father learned about injuries to two of the children from them, and the parties disagreed about the course of treatment. Mother decided to stop raising the children in the Catholic faith, as mandated by the parties' Joint Parenting Plan, without discussing the issue with Father. Mother refused to allow Father to obtain passports for the children so he could travel out of the country with them. The parties were unable to reach an agreement on whether their son should repeat third grade and on whether the children should attend therapy.

Mother was not honest with Father regarding issues affecting the children. In addition to the fabricated job offer in Colorado, Mother misled Father about the timing of her marriage to Ken. Though she told Father she remarried in July 2013, she and Ken did not actually marry until October 2013. Mother also was not honest with Father about the nature of an out-of-state funeral she attended with the children. Mother told Father the funeral was for Ken's grandmother, when, in fact, the service was for Stephanie's grandmother. During her testimony, Mother denied that

Ken had told her children to call him "father," but when the GAL had asked her about that prior to trial, she had admitted it was true. The real reason for the move to Texas was Stephanie's, not Ken's, employment there. Ken did not secure employment in Texas until November 2016, four months after the move.

There was tension between Mother and one of the children. The children's home in Texas has a security camera in one of the main living areas that Mother had used to monitor the children, especially Andrew, her oldest child. Andrew objected to being monitored and would turn the camera toward the wall so he was no longer visible. Father did not report any problems with Andrew, and the GAL found Andrew to be the most credible of the three children.

Mother admitted that she and Father disagreed more often than they agreed, that her relationship with Father has "gotten worse," and that she would consider split custody only if Father "became a better person." Mother acknowledged that one of her children viewed the parties as two tornadoes "on a collision course because everybody, including them, is a collateral victim of consequence to that." She admitted that joint legal custody was "not doable."

The GAL was concerned that there is an "atmosphere of acceptable deception" in Mother's home insofar as Mother says what she needs to say to get what she wants, and that atmosphere is a threat to the children. He found that at least two of the children believe that Mother, Ken, and Stephanie are engaged in "consensual cheating." The GAL concluded that the current joint legal custody arrangement was not working due to the parties' contemptuous relationship and their inability to communicate about the children. He also noted that the children did not want a change in physical custody.

On March 7, 2017, the trial court issued its Judgment and Decree of Modification from which Mother appeals. The Judgment includes findings of fact and conclusions of law. Based on its findings, the court granted Father sole legal custody and continued the parties' joint physical custody of the children pursuant to a new parenting plan (Plan) attached to, and incorporated in, the Judgment, concluding that the Plan is in the best interests of the children.[4] Under the Plan, the children are to reside with Father during the school year and all other times not specifically set aside to Mother. The Plan grants Mother custody every summer break from June 1 until August 1,

---

4. According to their briefs, both parties interpreted the trial court's decision as transferring legal custody to Father and maintaining physical custody with both Father and Mother. We note there is some potentially inconsistent language in the Plan, however. In pertinent part, the Plan states "MOTHER and FATHER shall share joint legal responsibility for the children and joint physical custody of the children...." First, we note that "legal responsibility" is not a term used in the relevant custody statutes, specifically §§ 452.410 and 452.375 (all statutory citations are to the Revised Statutes of Missouri (2016)). To the extent the trial court intended the term "legal responsibility" to mean "legal custody," the potential conflict arises because the Judgment grants Father sole legal custody, but the Plan states that the parties shall share joint legal responsibility. In order to be preserved for appellate review, allegations of error in the language of a judgment must be raised in a motion to amend the judgment. Rule 78.07(c) (all rule references are to the Missouri Supreme Court Rules (2017), unless otherwise noted); In re Marriage of Harris v. Harris, 446 S.W.3d 320, 324-25, 325 n.3 (Mo. App. S.D. 2014) (denying appeal based on inconsistency between sole physical custody language in the judgment and joint physical custody language in the incorporated parenting plan where the court found no indication in the record that father had presented the issue to the trial court). Here, Mother did not file a motion to amend the judgment. Thus, the issue is not properly before this Court.

every Christmas break, and every Spring break. In the event Mother relocates to within 30 miles of Father's residence, the Plan provides that the parties alternate custody of the children on a week-to-week basis. Mother filed this timely appeal.

### Standard of Review

On review of a custody-modification case, the appellate court will affirm the judgment "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Pasternak v. Pasternak*, 467 S.W.3d 264, 268 (Mo. banc 2015). "Substantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the circuit court's judgment." *Id.* (quoting *Ivie v. Smith*, 439 S.W.3d 189, 199 (Mo. banc 2014)). "Evidence has probative force if it has any tendency to make a material fact more or less likely." *Ivie*, 439 S.W.3d at 199. "To prevail on [a] substantial-evidence challenge, [the appellant] must demonstrate that there is no evidence in the record tending to prove a fact that is necessary to sustain the circuit court's judgment as a matter of law." *Pasternak*, 467 S.W.3d at 268 (quoting *Ivie*, 439 S.W.3d at 200).

"When reviewing whether the circuit court's judgment is supported by substantial evidence, appellate courts view the evidence in the light most favorable to the circuit court's judgment and defer to the circuit court's credibility determinations." *Ivie*, 439 S.W.3d at 200. "The trial court is in the unique position to determine the credibility, sincerity, character, and other intangibles of the witnesses." *Chapin v. Chapin*, 985 S.W.2d 897, 902 (Mo. App. W.D. 1999).

### Analysis

Mother raises three points on appeal. In her first two points, Mother argues that the trial court erred in finding that there was substantial evidence from which to conclude that the modification was in the best interests of the children. In her third point, Mother argues that the trial court committed reversible error in finding that she was engaged in a "polyamorous or polygamous" relationship because there was insufficient evidence to support that finding. We disagree.

Section 452.410 governs modification of custody.[5] A court may modify a prior custody decree when the court "finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." § 452.410.1. The statute requires courts to engage in a two-step inquiry. First, courts must determine whether there has been a change in circumstance based on facts that either arose after or were unknown to the court at the time of the prior decree. *Prach v. Westberg*, 455 S.W.3d 513, 517 (Mo. App. W.D. 2015). To modify a prior custody decree, for example, from joint legal or physical custody to sole legal or physical custody, the change in circumstance must be substantial. *Id.* at 516 (citing *Russell v. Russell*, 210 S.W.3d 191, 194, 197 (Mo. banc 2007)). By contrast, a change in the parenting time schedule without a change from joint to sole custody still requires a change in circumstance, but that change need not be substantial. *Id.*[6] If

---

5. All statutory citations are to the Revised Statutes of Missouri (2016).

6. Here, the trial court awarded both a change from joint to sole legal custody and a modifi-

the court finds the requisite change in circumstance, then the court must determine whether modification is in the child's best interests. *Id.* at 517.

In evaluating the child's best interests, the court must consider all relevant factors and issue written findings of fact and conclusions of law. § 452.375.2. Factors relevant to the evaluation include, but are not limited to, the following:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

*Id.* As the moving party, Father bore the burden of proving the requisite change in circumstance and that modification of custody or parenting time is in the best interests of the children. *Walker v. Walker*, 184 S.W.3d 629, 632 (Mo. App. S.D. 2006) (citing *McCreary v. McCreary*, 954 S.W.2d 433, 439 (Mo. App. W.D. 1997)). Where the record shows the trial court considered each of the statutory factors in determining the children's best interests, and the court's conclusions are supported by substantial evidence, the appellate court will affirm the trial court's judgment. *Pasternak*, 467 S.W.3d at 273.

Mother's first point on appeal asserts that the trial court erred in entering the Judgment and Decree of Modification because it was punitive in nature and failed to consider the best interests of the children. In her second point on appeal, Mother claims the trial court erred in finding that the move to Colorado and subsequent move to Texas were not in the children's best interests because there is a presumption that the previous custodial order is in the children's best interests, and Father failed to rebut that presumption. We interpret both of these points as challenging the sufficiency of the evidence relied on by the trial court in determining that modification of custody was in the best interests of the children.[7] As such, we address these points together.

---

cation in the parenting time schedule without a change to joint physical custody.

7. In her first and second points relied on, Mother did not challenge the trial court's findings on the threshold issue of whether there has been a change in circumstance sufficient to warrant a change in custody or parenting time. While there is some language in the argument portion of Mother's second point dealing with changes in circumstance, Mother neither raised the issue in either point relied on nor developed the issue in her argument. Generally, an issue not presented in a point relied on is not preserved for review. *Lusher v. Gerald Harris Constr., Inc.*, 993 S.W.2d 537, 544 (Mo. App. W.D. 1999). "A

Contrary to Mother's claim that the trial court "failed to consider the best interest of the children," the trial court made extensive findings of fact on each of the eight best-interests factors in § 452.375.2. For the first factor—the wishes of the children's parents as to custody and the proposed parenting plan submitted by both parties—the trial court simply laid out the plans proposed by the parties, noting that Mother proposed no changes in the existing parenting plan other than that the children would now live in Texas. Father proposed a change that would have the children live in Missouri with Father during the school year and give Mother parenting time during summers, Christmas break, and Spring break. The GAL did not submit a proposed parenting plan.

The trial court found that four factors favored Father's proposed parenting plan, and only the eighth factor—the wishes of the children as to the custodian—favored Mother. The trial court also found that factors two and six were neutral, favoring neither parent.[8]

In addressing the four factors favoring Father, the trial court set out evidence in support of its finding as to each factor. As to the third factor—the interaction and interrelationship of the children with parents, siblings, and any other person who may significantly affect the children's best interests—the trial court noted Mother's problems with her oldest child, Andrew. Mother testified that Andrew is disrespectful and immature to the extent that she believes it necessary to monitor him remotely via a security camera installed in their house. Father did not report any problems with Andrew, and the GAL found Andrew to be the most credible of the three children. The court also found that at least one of the children believes the relationship between Mother, Ken, and Stephanie is inappropriate, which could have a significant effect on the children in the future, if it does not already. Mother's and Father's extended families reside in Missouri, and Father testified that he would allow the children to visit Mother's family.

The trial court also found the fourth factor—which parent is more likely to allow the children frequent, continuing, and meaningful contact with the other parent—favored Father. The court concluded that Mother has no intention of fostering meaningful contact between the children

reviewing court is obliged to determine only those questions stated in the points relied on. Issues raised only in the argument portion of the brief are not presented for review." *Id.* (quoting *Martin v. McNeill,* 957 S.W.2d 360, 366 (Mo. App. W.D. 1997)). Moreover, Mother does not cite any authority on the issue of change of circumstance. Where an appellant does not cite relevant authority or explain why such authority is not available, the appellate court will not address the issue. *Kim v. Shelton,* 485 S.W.3d 377, 379 (Mo. App. W.D. 2016). Therefore, we will not review the trial court's findings on the issue of change in circumstance.

8. As to the second factor—the needs of the children for a frequent, continuing, and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the children—the court began by noting that, due to Mother first residing in Colorado and now Texas, frequent contact between the children and both parents is not possible. Mother testified that she believed the current custody arrangement afforded Father a meaningful relationship with the children, allowing the court to conclude that the same would be true for Mother if the arrangement were essentially reversed. As to the sixth factor—the mental and physical health of all individuals involved, including any history of abuse of any individuals involved—the court found this factor did not favor either parent because there was no evidence of abuse, and both parents are in good physical health.

and Father based on the following findings: (1) Mother inhibited Father's communications with the children by refusing to install Skype on their iPads, (2) she admitted to recording at least one conversation between Father and the children, (3) she misled Father regarding the children's out-of-state travel to attend the funeral of Stephanie's grandmother, and (4) Mother refused to cooperate with Father regarding obtaining passports for the children because she believed Father would kidnap the children. Mother testified that she would consider allowing additional custodial time with Father only if he "became a better person."

Although the trial court did not set them out when addressing the fourth factor, the court made other fact-findings that reflect on Mother's willingness to foster meaningful contact between Father and the children. The court found that Mother had been uncooperative with respect to Father's additional custody time and that she was not forthcoming with information about important events in the children's lives, indicating that Father's participation in those events was clearly not welcome. The court concluded that Father's only means of communication with the children was through Mother's cell phone, which she frequently refused to answer, and she would not have the children return Father's calls.

In finding that the fifth factor—the children's adjustment to their home, school, and community—favored Father, the trial court noted Father testified that he intends to re-enroll the children in St. Joseph Catholic School upon their return to Missouri. Based on that evidence, the trial court found that the children are or will be adjusted to their home, school, and community in Missouri. Mother's extended family and Father's family reside in Missouri. The children began attending school

in Texas at the beginning of the 2016-2017 school year. Before that, the children lived in the country in Colorado, away from their school and friends. Mother acknowledged that the situation in Colorado may not have been the best for the children.

The seventh factor—the intention of either parent to relocate the principal residence of the children—favored Father because, as the court noted, Father intends to remain in Cole County and to re-enroll the children in the school they attended before Mother relocated them to Colorado. And Mother has relocated twice—first to Colorado and then to Texas.

The trial court's analysis of the eight best-interests factors in this case is similar to the analysis affirmed by this court in *Prach*. There, this court found sufficient evidence to support the lower court's conclusion that it was not in the best interests of the minor children to modify parenting time or residence for mailing and educational purposes. *Prach*, 455 S.W.3d at 518. This court reviewed the lower court's detailed consideration of five of the eight best-interests factors and affirmed the lower court's decision where two of the five factors did not favor the requested modification and the other three factors were neutral. *Id.* at 517-19. *See also Pasternak*, 467 S.W.3d at 272-73 (holding evidence was sufficient that relocation was in the best interests of the children where the lower court made extensive findings with respect to seven of the eight factors). In the present case, the trial court considered all eight factors, made detailed findings of fact as to each, and concluded that four of the eight factors favored Father and one favored Mother.

The one factor favoring Mother—the wishes of the children as to the custodian—is not dispositive. The fact that children desire to live with one parent is not a sufficient basis for awarding custody

to that parent. *Weiss v. Weiss,* 954 S.W.2d 456, 460 (Mo. App. E.D. 1997). The court should consider the children's "preference[s] along with other facts and circumstances before it, but th[ose] preference[s] should be followed only if the welfare and interests of the child[ren], as determined by all evidence, are consistent with th[ose] preference[s]." *Kerr v. Louderback,* 35 S.W.3d 511, 514-15 (Mo. App. S.D. 2001) (quoting *Ijames v. Ijames,* 909 S.W.2d 378, 380 (Mo. App. S.D. 1995)); *see Gambino v. Gambino,* 636 S.W.2d 81, 82 (Mo. App. E.D. 1982) (finding no error with lower court's failure to follow the custodial preferences of the children where the court considered that factor among many others). The trial court clearly considered the children's wishes as one of many factors and determined that their wishes were outweighed by several other relevant considerations supporting modification. It is clear that the four factors favoring Father provided a sufficient basis for finding a modification was in the children's best interests.

■■■ In addition, we find that there was evidence in the record to support each of the facts relied upon by the trial court in conducting its best-interests analysis. On appeal, Mother does not challenge the evidentiary support for any of the facts relied upon by the trial court in performing its best-interests analysis. Instead, the primary basis for Mother's appeal is her claim that the court impermissibly used custody as a means to punish her for her perceived lifestyle choices, specifically the polygamous nature of her relationship with Ken, and for her deception that led Father to consent to, and the trial court to approve, her initial move to Colorado. We

acknowledge that courts may not use custody as a reward or punishment for either parent. *Petty v. Petty,* 760 S.W.2d 555, 557 (Mo. App. W.D. 1988) (citing *Bashore v. Bashore,* 685 S.W.2d 579 (Mo. App. W.D. 1985)) (holding that the decision to award custody to the father was not in the nature of a punishment for a lie Mother told under oath where there was substantial evidence to support the trial court's conclusion that awarding custody to the father was in the children's best interests and Mother was granted liberal visitation). However, the record here does not support Mother's contention that the trial court relied on her history of deception or the nature of her relationship with Ken in determining what was in the children's best interests. In her brief, Mother expressly argued that the trial court based its best-interests determination on its finding that "Mother is a liar" and that she has created an "environment of deception." She also implied that the trial court's best-interests analysis was based on its conclusion that she was engaged in a "plural marriage." While the court made these findings of fact, it did not rely on these facts to support its best-interests analysis. The only fact relied on by the trial court in its best-interests analysis that is related to Mother's allegations is the finding that "it is at least one of the children's belief that the relationship between Mother, Ken and [Stephanie] is inappropriate" and that such a belief could have a significant negative effect on the children. The conclusion that at least one of the children holds this belief is supported by the testimony of the GAL and the court's reliance on this fact is reasonable.[9]

---

**9.** It appears that the trial court's fact-finding regarding Mother's deception and the nature of her relationship with Ken were relevant to the court's necessary threshold finding of a change in circumstance. A change in circum-
stance can be based either on facts that have arisen since the prior decree or that were "unknown to the court at the time of the prior decree." § 452.410.1. The trial court pointed out that Mother had made misrepresentations

A recent decision by the Eastern District of this court is instructive on the issue of custody as a reward or punishment. In *Keel v. Keel*, 439 S.W.3d 866 (Mo. App. E.D. 2014), the court affirmed the transfer of physical custody from mother to father based on the lower court's analysis of the eight statutory best-interests factors. On appeal, mother alleged that "the trial court's decision was designed to punish her for her behavior." *Id.* at 879. While acknowledging that the "tenor and language of the court's judgment is quite critical of [m]other's actions and testimony to such a degree that it may seem to be a reasonable deduction that the court was not pleased with [m]other's actions," the court noted that the parties had been awarded joint legal and joint physical custody at the outset, with mother being the primary physical custodian. *Id.* at 879-80. As the primary custodian, mother bore the burden of complying with the parties' custody plan, which set out requirements for maintaining a continuous and meaningful relationship between each parent and the children. *Id.* at 880. The trial court found that mother's conduct "recurrently thwarted" her obligations under the custody plan, and her testimony showed a refusal to recognize or rectify her behavior in that regard. *Id.* The trial court's transfer of physical custody from mother to father was based on mother's shortcomings as they pertained to the best interests of the children and not, as mother argued, a punishment for her conduct. *Id.* We acknowledge, as in *Keel*, that the trial court's decision in this case is critical of Mother. But, as in both *Petty* and *Keel*, the trial court's decision here is clearly based on a consideration of the children's best inter-

ests and not on a desire to punish one parent or reward the other.

In Point II, Mother argues that the trial court erred in finding that her moves to Colorado and Texas were not in the children's best interests because there is a presumption favoring continuing primary placement of the children with her because she currently has primary physical custody of them. First, it is important to look at how Mother's moves to Colorado and Texas factored into the trial court's analysis of the children's best interests. In addressing the children's adjustment to their home, school, and community, the trial court noted that Mother acknowledged that the situation in Colorado might not have been the best for them, and the court found that it was reasonable to believe that the children would re-adjust upon their return to their previous home and school in Cole County. Because Mother no longer lives in Colorado, it is unclear how significant this fact was to the trial court's analysis. In addressing the intention of either parent to relocate, the court noted that Mother had relocated twice in three years. The statutory best-interests factors require the court to consider the intention of a party to relocate.

Second, based on her argument, Mother appears to contend that, in order to change primary physical custody of the children, there must be evidence that her home is not adequate and that placement with Father would be better. We are not persuaded by Mother's arguments. We note that the parties had joint legal and joint physical custody to begin with, and Mother had primary physical custody, at least in part, because of misrepresenta-

to the court regarding the existence of a job in Colorado and the nature of her relationship with Ken when seeking the court's approval of the settlement of the original case. After laying out the facts surrounding Mother's de-

ception and her relationship with Ken, among other findings, the trial court found a change in circumstance. A challenge to this finding has not been raised on appeal.

tions she made to Father and the trial court. Also, Mother's argument about a presumption favoring the parent who currently has primary physical custody diminishes the significance of the statutorily mandated best-interests analysis or at least changes that analysis in a way that is contrary to the plain language of § 452.375.2. "The best interest of the child is not merely an important consideration in modification proceedings under section 452.410, it is the trial court's central concern." *Robertson v. Nelson*, 502 S.W.3d 627, 637 (Mo. App. W.D. 2016) (quoting *In re Marriage of Soehlke v. Soehlke*, 398 S.W.3d 10, 15 (Mo. banc 2013)). "In making its determination of best interest, section 452.375 requires that the court consider the public policy stated in section 452.375.4 and the eight statutory factors included in section 452.375.2."[10] *Hamer v. Nicholas*, 186 S.W.3d 884, 887 (Mo. App. W.D. 2006) (quoting *Cerutti v. Cerutti*, 169 S.W.3d 113, 115 (Mo. App. W.D. 2005)); *see also Keel*, 439 S.W.3d at 880 (affirming the transfer of physical custody from mother to father based on the lower court's analysis of the eight statutory factors despite the fact that "[n]o one maintains [m]other is not a good parent, or that [f]ather is the better parent."). Contrary to Mother's argument, in modifying parenting time as it did, the trial court was not required to find that Mother's home is inadequate and that primary placement with Father would be better. Instead, the trial court focused, as it should have, on the eight statutory factors relating to the best interests of the children.

Based on our review of the record, the applicable statutes, and our prior ruling in *Prach*, we conclude that Father met his burden of proving that modification is in the best interests of the children and that there is substantial evidence to support the trial court's ruling. On appeal, Mother fails to meet her burden of showing a lack of substantial evidence to support the court's judgment. Points I and II are denied.

In her third and final point on appeal, Mother argues that the trial court erred in finding that a "polyamorous or polygamous" relationship existed between Mother, Ken, and Stephanie because there was insufficient evidence to support the finding. Mother claims the evidence on this point was conjecture based on previous circumstances that no longer exist; specifically, since their move to Texas, Mother and Ken no longer live in the same house with Stephanie. Although not clear from her third point relied on, it appears that Mother is arguing that the trial court improperly relied on this finding in conducting its best-interests analysis.

We find Mother's third point on appeal lacks relevance in light of our conclusions on Points I and II that the trial court did not rely on the actual nature of Mother's relationship with Ken in determining what was in the children's best interests. We previously delineated the evidence supporting the trial court's ruling on the eight best-interests factors, and we found that evidence to be substantial. Despite Mother's arguments to the contrary, the evidence on which the court relied is separate and apart from the court's findings regarding Mother's lifestyle. The court's best-

---

**10.** The public policy stated in § 452.375.4 is reflected primarily in the second and fourth factors of the best-interests analysis. In relevant part, § 452.375.4 states, "it is the public policy of this state that frequent, continuing and meaningful contact with both parents ... is in the best interest of the child[ren] ... and that it is the public policy of this state to encourage parents to participate in decisions affecting the health, education and welfare of their children, and to resolve disputes involving their children amicably through alternative dispute resolution."

interests analysis is supported by substantial evidence unrelated to the lifestyle issue. Mother's third point on appeal is irrelevant because that issue was not the basis for the court's judgment. Point III is denied.

## Conclusion

In light of the trial court's consideration of the children's best interests and resolving factual conflicts in favor of the court's decision, there was substantial evidence to support the Judgment and Decree of Modification. It is affirmed.

Cynthia L. Martin, Presiding Judge, and James Edward Welsh, Judge, concur.