**Tammy Lynn ARMSTRONG, Respondent,**

v.

**Steven Gale ARMSTRONG, Appellant.**

No. 64384.

Missouri Court of Appeals,
Eastern District,
Division One.

April 19, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 6, 1994.

Seth D. Shumaker, Lancaster, for appellant.

George L. Gundy, Memphis, for respondent.

CRIST, Judge.

Steven Armstrong (Father) appeals from decision of the trial court to grant the motion to modify child custody filed by Tammy Armstrong n/k/a Tammy Burchett (Mother). The decision removed physical custody of their two minor children from Father and placed it with Mother. We affirm.

Mother and Father were married on September 19, 1981. Two children, A.A. and C.A., were born of the marriage. A.A. was born June 24, 1983. C.A. was born April 13, 1985. The marriage of Mother and Father was dissolved on December 3, 1986. At that time, Mother agreed Father should be granted custody of the two children. The decree of dissolution granted Father custody subject to reasonable visitation by Mother at reasonable times and places. The decree specifically provided visitation to Mother on alternate weekends, for six weeks in the summer in two separate three week periods, one week during Christmas vacation, Christmas Day each year from 9 a.m. to 4 p.m., Halloween eve, Easter, Fourth of July, Mother's Day, and Thanksgiving Day either from 9 a.m. to 2 p.m. or from 2 p.m. to 8 p.m. (alternating years). Mother was ordered to pay child support of $20 per child each month.

On January 4, 1993, Father filed a motion to modify the decree of dissolution. In that motion, Father requested the court allow him to remove the minor children from Missouri to Wisconsin and further requested a decrease in Mother's visitation. On January 15, 1993, Mother filed a counter motion to modify, alleging a change in circumstances warranting a transfer of custody of the minor children to her for their best interests. On April 13, 1993, Father amended his motion to modify, stating he no longer required permission to take the children to Wisconsin. However, he requested an increase in child support.

The motions to modify were heard on June 21, 1993. On July 15, 1993, the motion court filed its findings and conclusions and ordered Mother and Father share joint legal custody of the children but transferred primary physical custody to Mother. The court further ordered Father to pay Mother $391 per month for child support and provide health insurance for the children. Father appeals.

In Father's three points of appeal, Father challenges the court's decision to transfer physical custody of the two minor children to Mother. In Points I and II, Father contends the court erred in failing to find "substantial and continuing changes" with him or the children and the court's order is not in the best interests of the children. In Point III, Father argues the transfer of custody to Mother is against the weight of the evidence.

The evidence presented at trial, viewed in the light most favorable to Mother, revealed the following: At the time of Mother and Father's dissolution of marriage in 1986, Mother believed she was unable to care for the two children, either emotionally or financially. She testified her condition "wasn't very good; I was very upset" and the dissolution was "really hard on me." She did not seek custody of the two children and agreed it was best they remain with Father. In so agreeing, Mother relied upon Father's assertions he would share the children with her a great deal and would allow liberal visitation.

For the next several years, Mother lived an unstable life. However, in 1991, Mother married her current husband, Shawn Burchett. Burchett had a stabilizing effect on

her. He is a high school teacher and attends church regularly. Mother began to attend church regularly. At the time of trial, Mother and Burchett lived in Cantril, Iowa, in a four-bedroom house, which they were buying. Mother currently works at Lebanon Cafe as a waitress. She works Monday through Friday, 6:30 a.m. to 3:00 p.m. and alternate Sundays. However, she testified if she had custody of the children, she could work fewer hours and always be at home when they were at home.

Father also remarried. In 1987, Father married Ronda Armstrong. Ronda has a son from a prior marriage and Father and Ronda have one child together. Since Father's remarriage, Ronda has become the primary caregiver for A.A. and C.A. In October 1992, Father changed jobs and is now employed as a truck driver for Wal–Mart. The new position is headquartered in Mt. Pleasant, Iowa. The job requires Father to leave the home on Sunday night or early Monday morning and remain gone from the home until Friday night or early Saturday morning. Father stated he tries to come home for one or two nights during the week on occasion. While Father is gone during the week, the children remain in Ronda's custody and care. The children call Ronda "Mom" and they call Mother "Tammy Mom." The court specifically found Ronda's assertions she did not encourage this to be incredulous.

At trial, Father admitted into evidence a "diary" of alleged abuses of the children by Mother. The diary was begun after Father married Ronda. All the entries are in Ronda's handwriting. The entries relate solely to extremely minor incidents, such as the children being dirty upon return from Mother's visitation. Any allegations were unsubstantiated. The only serious incident noted was when Mother allegedly gave C.A. adult-strength Sudafed. However, the evidence clearly revealed Mother gave C.A. only one tablet, the recommended dosage for a child over six years old. In addition, Ronda and Father have made a "hotline" call about Mother's alleged abuse of the children, which the Division of Family Services found to be unsubstantiated.

Mother testified she is never able to confer with Father about their children. Father leaves the decision-making about the children to Ronda. Mother is forced to make visitation arrangements with the children through Ronda. In the past, Ronda and Father have been difficult about Mother's dates for summer visitation. Furthermore, Ronda and Father have completely failed to keep Mother informed about the children's progress at school. Mother has never been informed of parent-teacher conferences at the school. The kindergarten teacher of both A.A. and C.A. testified she dealt primarily with Ronda. C.A.'s first grade teacher testified only Ronda came to the parent-teacher conferences. Father and Ronda have failed to provide Mother with copies of the children's report cards. Mother has obtained some of those cards from the school.

Mother also alleged Ronda had verbally and physically abused the children. She testified the children had told her she had slapped C.A. on the mouth and spanked him with a belt. Ronda admitted she had slapped C.A. on the mouth for saying abusive language.

At the trial, A.A. told the judge in chambers she wanted to live with Mother. A.A. was unable to testify further. C.A. stated he could live with either Mother or Father. C.A. also stated that most of the time he only sees Father every other weekend.

The court found changed circumstances justifying a transfer of physical custody to Mother. Contrary to Father's assertions, the court clearly cited the changed circumstances. Generally, the court relied upon: (1) Father and Ronda's interference with Mother's visitation was detrimental to the welfare of the children; (2) Mother's circumstances have improved substantially since the dissolution; (3) Father is no longer acting as the primary caregiver of the children and is gone from the home for most of the week; and (4) the ages, lifestyles, and social behavior of the children have changed. The court further noted Father had delegated the care of the children to Ronda and could articulate few episodes of activities he shared with them. In contrast, Mother was available at home to care for the children.

The court also relied upon the stated wishes of A.A., who told the judge in chambers she wished to live with Mother. In addition, Father had failed to assure the children would have meaningful contact with Mother. Indeed, he had sought further estrangement by requesting a reduction of visitation for Mother. Finally, the court found the present custody provision unsatisfactory because it prevented both parents from spending meaningful time with the children, and a new order was needed to provide for their best interests.

We review the decision of the trial court only to determine if it is based on substantial evidence, is not against the weight of the evidence, and is not based on any erroneous declaration or misapplication of the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Lisec v. Coy*, 793 S.W.2d 173, 175[1] (Mo.App.1990). However, in matters of child custody, the appellate court gives greater deference to the trial court, recognizing its better position to judge the credibility of the witnesses. *Shoemaker v. Shoemaker*, 812 S.W.2d 250, 254 (Mo.App. 1991).

A court may modify a prior custody decree only if:

it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.

§ 452.410, RSMo Supp.1993. "The change in circumstances must be such as to give definite promise that the custody change will substantially benefit the child." *In re Marriage of Thompson*, 682 S.W.2d 849, 851[3] (Mo.App.1984). Where custody has once been adjudicated, the custodian parent is presumed to remain suitable and the burden of proving a sufficient change of circumstance to transfer custody lies with the noncustodial parent. *Shoemaker*, 812 S.W.2d at 254[6].

In determining the best interests of the children, the court must examine all relevant factors, including:

(1) The wishes of the child's parents as to his [or her] custody;

(2) The wishes of a child as to his [or her] custodian;

(3) The interaction and interrelationship of the child with his [or her] parents, his [or her] siblings, and any other person who may significantly affect the child's best interests;

(4) The child's adjustment to his [or her] home, school, and community;

(5) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved;

(6) The needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(7) The intention of either parent to relocate his residence outside the state; and

(8) Which parent is more likely to allow the child frequent and meaningful contact with the other parent.

§ 452.375.2, RSMo Supp.1993.

We find no error in the trial court's modification to transfer custody of the minor children to Mother. First and foremost, Father's current occupation is a change in circumstance resulting in a situation where the minor children are spending the vast majority of their time with a nonparent. Father has essentially abdicated his responsibility for the children to his current wife Ronda. In fact, Father admits he is no longer the primary caregiver. Under the present situation, the children spend two weekends a month with Mother and about two weekends a month with Father. The majority of every week is spent solely in the custody of their stepmother Ronda. Under the facts of this case, this situation is unacceptable. Neither the children nor the parents benefit when the children's time with their biological parents is so limited. Furthermore, such a decree is contrary to the stated policy of Missouri, which is "to assure children frequent and meaningful contact with both parents" and "encourage parents to share decision-making rights and responsibilities of child rearing." § 452.375.3; *See also, Cornell v. Cornell*, 809

S.W.2d 869, 873 (Mo.App.1991) (policy of state to afford children ample opportunity for close contact with both parents). This change in circumstances alone is enough to warrant a modification of custody. *See, Caywood v. Harris*, 646 S.W.2d 144, 144–45[1] (Mo.App.1983); *Cf.* § 452.375.2(6) (ability and willingness of Father to perform his parental function is relevant factor).

Second, the evidence supports the trial court's conclusion Mother would be more likely to encourage frequent and meaningful contact. Mother testified she is unable to communicate with Father about the children and Father defers to Ronda. Mother is rarely able to confer with Father about the children's health, education, and welfare. *See,* § 452.375.5 (parents obligated to exchange such information). Mother must communicate with Ronda to set up visitation. Animosity exists between Ronda and Mother. Further, there is evidence Father and Ronda have hindered Mother's contact with the children and have continually failed to notify her about the children's educational events. This evidence is relevant to a consideration of what is in the children's best interests. *See, Cornell*, 809 S.W.2d at 873; *McCammon v. McCammon*, 680 S.W.2d 196, 200[7] (Mo. App.1984); *Cf.* § 452.340.6, RSMo Supp.1993 (court may transfer custody upon showing custodial parent has failed to provide visitation as decreed).

In addition, the record supports the trial court's conclusion Father "has demonstrated little conciliation in assuring that the children have a meaningful relationship with their mother." Father sought a further reduction in Mother's visitation with the children. Father said he wanted the reduction because "[t]he kids are gone too much" and he wanted more "quality" weekend time with them. Father's complaints are mainly related to the insufficiency of his own time with them, an insufficiency created by his own job.

Also, A.A. stated she wished to live with Mother. These wishes, while not overriding, are a relevant factor. *See, Thompson*, 682 S.W.2d at 851[9]. Combined with other evidence in this case, they indicate the best interests of A.A. will be served by living with Mother.

Father argues Mother's history of instability weighs against her as custodian of the two children. However, Mother's evidence clearly shows she has settled down. She is married to a stable man, is buying a home, and is working. She is currently able to provide the children with a stable, comfortable home. This change in her circumstances may be considered in determining what is in the children's best interests. *See, Lisec*, 793 S.W.2d at 177[8].

Finding no error, we deny Father's points on appeal.

Modification of custody decree to transfer primary physical custody to Mother is affirmed.

CRANDALL, P.J., and REINHARD, J., concur.