Judy Ann KORDONOWY, Plaintiff–Respondent,

v.

Mitchell Lee KORDONOWY, Defendant–Appellant.

No. 64246.

Missouri Court of Appeals, Eastern District, Division Two.

Dec. 6, 1994.

Richard C. Bresnahan, Clayton, for appellant.

Judy Ann Kordonowy, pro se.

PUDLOWSKI, Judge.

Husband challenges the maintenance, child custody and division of marital property provisions of the decree dissolving his marriage to wife. We affirm the decree granting the dissolution but remand with instructions concerning the challenged provisions.

Judy and Mitchell Kordonowy were married on August 5, 1967. They had three children, Kristina, born 9/21/70, Scott, born 9/21/78, and Natalie, born 1/23/83. Mitchell is a graduate of Washington University and has worked at Monsanto since 1978. Judy was essentially a homemaker until 1989 when she went to work for the Defense Mapping Agency.

There was a trial on the merits before the Honorable Larry L. Kendrick beginning on February 25, 1992. During the trial, husband made four requests to call the adult child, Kristina and the minor children to testify or alternatively to have the court interview the children in camera. Each time the request was denied. The court entered its finding of facts, conclusions of law and a decree of dissolution on March 8, 1993. Mitchell filed post-trial motions for amendment of judgment and a new trial on March 23, 1993. On April 19, 1993, the motion for amendment and the motion for new trial were argued and submitted. On June 10, 1993, the motion for amendment of judgment was granted in part, denied in part and the motion for new trial was denied.

The court in its decree ordered the primary legal and physical care, custody and control of the minor children to Judy. Mitchell was awarded visitation rights and temporary custody. The court ordered Mitchell to pay child support and maintain medical, hospital, dental and pharmaceutical

insurance through his employer. Judy was also awarded periodic maintenance subject to modification which terminates upon the death of either party or the remarriage of the wife. The court divided the marital property and the marital debts. In addition, Mitchell was ordered to pay Judy's attorney's fees and the court costs. This appeal followed.

On appeal, Mitchell contends the trial court erred on four points. Essentially, he contends that the trial court erred in awarding the primary legal and physical care, custody and control of the minor children to Judy, awarding the marital residence and a disproportionate share of the marital property to Judy and awarding maintenance to Judy. The basis for all four points of error is the same: the trial court's refusal to allow the minor children or the adult child, Kristina, to testify or at least interview them in camera. Mitchell contends that such testimony would have an effect on the distribution of assets and custody of the children. Mitchell relies on *R.S.M v. J.D.M.*, 542 S.W.2d 361 (Mo.App.1976) and statutory authority for his contentions.

We will affirm the court's decree if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Osmun v. Osmun*, 842 S.W.2d 932, 934 (Mo. App.1992).

We hold that the trial court committed error by not allowing Kristina, the adult child to testify. The offer of proof made by Mitchell's counsel displayed relevant testimony. The reason given for not allowing her to testify was neither a lack of competency nor relevancy. Husband was entitled to present her testimony. Kristina, based upon the offer of proof, could have given relevant testimony on factors set out in § 452.375 RSMo Supp.1993 concerning child custody, factors set out in § 452.335 RSMo Supp.1993 determining maintenance and the factors set out in § 452.330 RSMo Supp.1993 regarding the disposition of marital property. Accordingly, we remand with instructions to permit Kristina to testify.

In regard to the minor children's testimony, courts have split the subject matter into two areas: one regarding their custodial preference and the other regarding their knowledge of the parents' activities. We will address both topics separately for each minor.

Regarding custodial preference, the trial court has discretion to interview the children or allow them to testify. In discussing this point in *Osmun v. Osmun, supra*, we stated "[i]t is true, as husband argues, that a court in making its custody determination must consider the wishes of a child as to his or her custodian. However, the decision whether to ascertain such wishes through an in-chambers interview of the child is discretionary with the trial court." 842 S.W.2d at 936. [citations omitted].

At the time the trial began, Natalie was nine years old. Although it is discretionary to interview her, in *R.S.M. v. J.D.M., supra*, we addressed this point:

Sec. 452.385 RSMo.1969, provides that the court may determine such preference by interview in chambers with counsel present and participating. Such a procedure is discretionary. In *Johnson v. Johnson*, 526 S.W.2d 33 (Mo.App.1975) we held it was not error for a court not to interview a child of tender years as to his preference. Such a child is too young to have a rational basis for a preference and even subjecting him to expressing a preference may have serious adverse effects.

Exactly what age is too young we do not attempt to establish here. We believe it the preferable procedure, if there is doubt, for the court to conduct a voir dire examination or interview to determine whether the child is capable of a rational preference. Here, however, we do not find an abuse of direction in the court's determination that a child less than nine could not make a rational choice. Children of that age frequently make such decisions upon considerations unrelated to their welfare.

542 S.W.2d at 362–363.

We, too, decline to establish an exact age which is too young. At the time of the trial, Natalie was only nine years old. Because the decision is within the discretion of the trial court, we hold that the trial court did

not err by not interviewing Natalie in camera to determine if she was too young to express a custodial preference.

■ The treatment of Scott, however, should have been different. At age thirteen, he is not of such tender years that it would necessarily be traumatic to interview him regarding his custodial preference. The trial court should have at least interviewed him to determine if he was competent to testify regarding his custodial preference.

■ The other subject matter which the minor children could have testified about is the parent's activities. In *R.S.M. v. J.D.M.,* *supra,* we addressed this point:

> As to permitting the child to testify concerning the activities of his parents, we arrive at a different conclusion. A parent has a right to call upon his children, if competent, to testify in a child custody proceeding where such evidence is relevant. *J.L.W. v. D.C.W.,* 519 S.W.2d 724(14) (Mo.App.1975). It is the obligation of the trial court to determine by proper voir dire examination that a child is competent to testify 'and by the same token it is equally his duty to determine by a proper voir dire examination, that the child is incompetent before precluding it from testifying.' *Benjamin v. Benjamin,* 370 S.W.2d 639 (Mo.App.1963). No such voir dire was conducted here, and the expressed reason for refusing to allow the child to testify was not a lack of competence.

*Id* at 363.

■ In the case at bar, as in the cited case, the judge did not allow the minor children to testify nor conduct an in camera interview. The reason expressed by the court was neither incompetency nor lack of relevancy. The court stated that it was not in the best interest of the children. In *R.S.M. v. J.D.M, supra,* the trial court had "refused husband's request on the basis that it was not in the best interests of the child to permit him to testify on the conduct of his parents or to express a choice of custodian." *Id* at 362. In addressing this refusal, we stated that:

> The record does not show any basis for the court's conclusion that testifying would not be in the best interests of the child. Some of the claimed misconduct of the wife, such as leaving the child alone for lengthy periods at night, does not appear on its face to be so traumatic to the child that he would inevitably be injured by testifying about it. Nor would testifying concerning sexual activity or absence of it by the wife necessarily have such traumatic effect, depending upon the maturity, intelligence and sophistication of the child, and the degree of direct exposure to the conduct. These matters could and should have been determined by voir dire examination or interview on the record, either in court or in chambers. What effect such testimony, if permitted following voir dire, might have on the determination of custody we cannot know. In a close case, as this one is, it could be critical.

*Id* at 363.

In the case before us, the trial court gave no explanation why it was not in Natalie's best interest to testify. Accordingly, we hold that the trial court committed error by refusing the testimony of Natalie regarding her parents' activities without conducting a voir dire examination to determine if she was competent.

■ The trial court, however, gave an explanation for excluding Scott's testimony despite the fact that he was older. There was testimony that Scott was emotionally distressed. In its Findings of Fact, the court stated in regard to not allowing the children to testify:

> [t]he Court did not allow either of the minor children or Kristina to testify. Respondent (husband) made four requests upon the Court to interview the minor children and Kristina in chambers. When asked by the Court what information the children would provide, the Respondent testified that the children would say who they think is the best parent. When asked by the Court whether such a burden should be placed on Scott's shoulders, Respondent testified that Scott is very smart and knows what is in his best interest. Respondent also testified that Scott lies to

everyone and could not adequately supervise Natalie during after-school hours. However, when Petitioner (wife) resumed full-time employment more than a year before the separation, her work hours initially were such that the children were left alone during after-school hours at a younger age and without protest from Respondent. The Court heard testimony from the parties that Scott had threatened to kill himself and was in counseling. Scott's counselor attributed Scott's problems to the parties placing Scott figuratively in the middle between the parties as a result of the parties anger towards each other. Respondent repeatedly testified that he continually informed Kristina as to what Petitioner was doing, apparently in an attempt to convince her of the correctness of his positions and actions and the incorrectness of Petitioner's positions and actions. Although the evidence of the time frame was somewhat confusing, Respondent was apparently willing to violate an Adult Abuse Order in order to get a paper or papers to show Kristina. Respondent testified that he had Scott return papers to the family home which Respondent had taken from the family home without Petitioner's knowledge or consent. The Court has noted the inconsistencies in Respondent's positions and testimony and his lack of concern for or awareness of the children's best interest and welfare in his zealous drive to prove that he is right.

What we stated in *J.L.W. v. D.C.W.*, 519 S.W.2d 724 (Mo.App.1975) and cited with approval in *R.S.M. v. J.D.M.*, 542 S.W.2d at 363, is applicable here:

> [h]owever, we have an aversion to requiring a child of tender years to testify in a child custody proceeding as to the immoral behavioral attributes of his parents. Thus, if the trial court has before it some basis to believe that requiring the child to testify would be detrimental to the best interests of the child, it may exercise its discretion in refusing to require the child to testify.

519 S.W.2d at 731.

The trial court stated an adequate basis for not allowing Scott to testify regarding his parents' activities. From its Findings of Facts, it is clear that the trial court felt that it was not in his best interests to testify about his parents' activities due to his emotional state. Accordingly, we hold that the trial court did not commit error in declining to interview Scott or allow him to testify.

We remand this case to the trial court with instructions to allow the testimony of Kristina. In addition, the trial court is instructed to examine Scott and determine whether or not he is competent to testify regarding his custodial preference only. The trial court is further instructed to voir dire Natalie to determine if she is competent to testify regarding only her parent's activities. If competent, the trial court must determine whether her best interests warrant allowing her to testify.

The judgment awarding custody, maintenance and dividing the marital property is reversed and cause remanded for further proceedings in accordance with this opinion.

SMITH, P.J., and WHITE, J., concur.