

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| SAM PRACH, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | **WD77511** |
| v. | ) | |
| | ) | **OPINION FILED:** |
| | ) | **March 3, 2015** |
| DARMAN (PRACH) WESTBERG, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Boone County, Missouri
The Honorable Leslie Schneider, Judge**

**Before Division I:**  Cynthia L. Martin, Presiding Judge, and
Thomas H. Newton and Mark D. Pfeiffer, Judges

Ms. Darman Westberg ("Mother") appeals the judgment of the Circuit Court of Boone County, Missouri ("trial court"), denying Mother's motion to modify the judgment of dissolution of marriage between Mother and Mr. Sam Prach ("Father").  Specifically, Mother sought to modify the terms of the parenting plan by changing their children's residence for mailing and educational purposes from Father's address to Mother's address and by changing the parenting time schedule.  On appeal, Mother claims that the trial court erred:  (1) in using the wrong legal standard to determine whether a change in circumstances had occurred; (2) in determining that the best interests of the children did not warrant modification; (3) in denying Mother's motion

requesting the trial court to conduct an in camera interview of the children; (4) in releasing the Guardian ad Litem ("GAL") prior to the final hearing on the motion to modify; and (5) in awarding attorney's fees in the amount of $1,500 to Father. We affirm.

## Factual and Procedural Background

Mother's and Father's marriage was dissolved in March of 2009. Mother and Father were awarded joint legal custody and joint physical custody of their children, L.O.P. ("Son") and K.P. ("Daughter"), and they shared roughly equal parenting time with the children. On August 3, 2011, due to Mother's remarriage and relocation to South Carolina, the trial court entered a revised parenting plan, by agreement of the parties. The revised parenting plan continued the parents' joint legal custody and joint physical custody of the children, made Father's residence the residence of the children for mailing and educational purposes, and, with certain exceptions for holidays, awarded Father parenting time during the school year and Mother parenting time during the summer. Father worked nights, so he did not see the children much on the evenings he worked; the children stayed with Father's parents ("Grandfather" and "Grandmother"), who also lived in the home with them, while Father was at work.

When Son began fifth grade in 2012, Son began to have trouble in school. Although Son's behavior was not an issue, his fifth-grade teacher became concerned that Son was not finishing his class work in a timely manner, and his homework sheets were not being consistently signed by a parent.[1] Father did not feel capable to help Son with his homework, and due to his work schedule, he was not always home to make sure that Son completed his homework. Mother learned of Son's troubles and, through frequent email contact with Son's teacher, was able to "sign" some of Son's homework sheets electronically. Mother also, on at

---

[1] Daughter's homework sheets were also not consistently signed by Father, but her teacher was not overly concerned by this as Daughter performed well in school and was socially well-adjusted.

2

least one occasion, helped Son with his homework over the phone. But around this time, Mother filed her motion to modify, believing that she could better help Son with his school work if the children lived with her in South Carolina during the school year. Father was also notified of Son's teacher's concerns, and Father and the teacher eventually worked out an arrangement where Son could stay after school and receive tutoring from the teacher. This seemed to work well, and, in the fifth grade, Son's grades improved. The children spent the summer of 2013 in South Carolina with Mother.

When school began in the fall of 2013, Son's grades again became an issue. Son was not regularly finishing his in-school assignments, and he was not turning in homework assignments. Son received two Ds and two Fs in his first-semester core classes in the sixth grade. Son also failed his computer class and had to drop out of band after getting a late start because Father did not timely obtain Son's musical instrument for use in band class. In the winter of 2013, however, Father arranged for Son to go in before school regularly for extra help; Son's grades began to improve. Son was turning in more homework and becoming more confident. Son started to find his place and develop relationships with others. Son eventually obtained passing grades in all of his classes. But in February of 2014, around the time that Mother filed a motion to reopen the evidence in the case, Son began missing assignments again, and his teachers noticed him becoming nervous and withdrawn; Son's anxiety manifested itself in various physical "tics." Son's anxiety became noticeably worse during a parent-teacher conference when Mother brought up Father's lack of support at home in Son's presence.

On March 21, 2014, after several evidentiary hearings, the trial court entered a judgment finding that there had "not been a continuing change of circumstances warranting modification." The trial court also concluded that it was not in the best interests of the minor children to modify

parenting time or residence for mailing and educational purposes. It awarded Father $1,500 in attorney's fees. This appeal follows.

## Standard of Review

"We will affirm the judgment of the trial court unless it is not supported by substantial evidence; it is against the weight of the evidence; or it misstates or misapplies the law." *Clayton v. Sarratt*, 387 S.W.3d 439, 444 (Mo. App. W.D. 2013) (internal quotation omitted). "We will not reverse the trial court's judgment on the basis that it is against the weight of the evidence unless we have a firm basis for concluding that the judgment is wrong or that it is against the logic of the circumstances." *Id.* (internal quotation omitted). We will not disturb the trial court's determination of custody issues unless we are firmly convinced of its error and that the award is against the best interests of the children. *Id.* "When there is conflicting evidence, the trial court has the discretion to determine the credibility of witnesses, accepting all, part, or none of the testimony it hears." *McCreary v. McCreary*, 954 S.W.2d 433, 439 (Mo. App. W.D. 1997) (internal quotation omitted). We recognize that the trial court is in the better position to judge the credibility of the witnesses. *Armstrong v. Armstrong*, 877 S.W.2d 127, 130 (Mo. App. E.D. 1994).

## Analysis

Mother's first point on appeal is that the trial court erred in applying the wrong standard as to whether a change in circumstances had occurred to warrant a modification to the parenting plan under section 452.410.1. That section provides:

Except as provided in subsection 2 of this section, the court shall not modify a prior custody decree unless it has jurisdiction under the provisions of section 452.450 and it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.

4

§ 452.410.1.

If a motion to modify seeks to change the "custody" of the children, for example, from joint legal or physical custody to sole legal or physical custody or from sole custody in one parent to sole custody in the other parent, the "change in circumstances" must be substantial. *Russell v. Russell*, 210 S.W.3d 191, 194, 197 (Mo. banc 2007). However, when the motion to modify seeks only changes in terms "related to the custodial arrangement," such as changes in the parenting time schedule or to the minor child's address for mailing and educational purposes, the plain language of the statute controls, and the change in circumstances need not be substantial. *Id.*; *Clayton*, 387 S.W.3d at 445-46. The trial court's judgment discussed both standards, but ultimately concluded, without really stating which standard it was applying, that "under either standard, there has not been a *continuing* change of circumstances warranting modification." (Emphasis added.)

Mother's challenge is that the judgment appeared to require a "continuing" change in circumstances, whether or not it concluded that the "continuing" change also needed to be "substantial." Mother is correct; "continuing" changes are required only for modification of child support, not custody. *Hightower v. Myers*, 304 S.W.3d 727, 734 (Mo. banc 2010). However, in this case, the standard used by the trial court to determine whether a change in circumstances had occurred is not dispositive.

The finding by a trial court of a change in circumstances is a threshold matter; *if* the trial court finds that a change in circumstances has occurred, it *then* must determine whether a modification to the prior decree and parenting plan is warranted, considering the best interests of the children. *Ronquille v. Ronquille*, 263 S.W.3d 770, 773 (Mo. App. W.D. 2008); *McCreary*, 954 S.W.2d at 439. In this case, irrespective of the "change in circumstances" standard used by

5

the trial court, the trial court additionally (and perhaps out of an abundance of caution) analyzed the "best interests" of the children and concluded that modification was not warranted. Therefore, Mother fails to demonstrate any prejudice from the trial court's having evaluated the alleged "change in circumstances" under an incorrect legal standard.

Point I is denied.

We next review the trial court's "best interests" analysis, which is the subject of Mother's second point on appeal. Section 452.375.2 directs the court to determine the best interests of the child or children considering "all relevant factors including":

- "The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties." The court found that this factor favored neither Mother nor Father, because both Mother and Father wished to have custody of (and school-year parenting time with) their children.

- "The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child." The trial court found that this factor favored neither parent, as both had "shown an ability to actively perform their function as mother and father." Mother takes issue with this finding because she claims that Father has abdicated much of his parental responsibility to either his parents or Son's teachers at school due to Father's work schedule.[2] She points out that there was evidence that most week days, Father does not see much of the children. Father initially testified that he

---

[2] While the trial court noted that Father's work hours and the fact that the grandparents cared for the children while Father was at work had not changed from the time of Mother's and Father's consent decree (after her relocation to South Carolina), all facts are considered under best-interests analysis, irrespective of whether they comprise the changed-circumstances requirement. *See* § 452.375.2 (no requirement that best-interest factors also be changed circumstances). Mother's prior acquiescence in the custodial and parenting time arrangement, however, is relevant, and was properly considered by the trial court.

6

often sleeps until after 5:30 or 6:00 p.m. and then has to be at work at 7:00 p.m. He does not get home from work until 7:30 a.m., when the children are either leaving for school or are at school. However, at the last evidentiary hearing, which was held at *Mother's* request, Father testified that he had modified his sleep schedule so that he had been waking up at 4:30 p.m. to spend more time with the children and to ensure that Son gets a good start on his homework before Father has to leave for work. In addition, one of Son's teachers testified that, as of late 2013, Father had consistently been bringing Son to school early on his days off (Thursday and Friday) for extra tutoring from Son's teachers, which had helped Son raise his grades. There was also evidence that Father had attended parent-teacher conferences, school parties, and an open house and that Father had become more diligent at looking for and signing homework and school correspondence. Thus, substantial evidence supported the trial court's conclusion that Father was making a concentrated effort to maximize the time he spends with the children and to help them meet their needs. Father sees the children for at least some portion of each evening that he has to leave for work; and even though Father relies upon his parents to assist him with the children, this situation is not similar to the Father in *Armstrong v. Armstrong*, 877 S.W.2d 127 (Mo. App. E.D. 1994), the case cited by Mother, where the father left the parties' children nearly completely in the care of the children's stepmother and where the father saw the children only every other weekend. While having children in the care of a parent is favorable to having the children in the care of another relative, this is only one consideration among many. Viewing the facts in the light most favorable to the trial court's findings on this factor, we do not find the trial court's conclusion that this factor

7

favors neither parent to be against the weight of the evidence, nor is it without the support of substantial evidence in the record.

- "The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests." The trial court found that this factor favored Father, because the children had a good relationship with Father,[3] their grandparents, and their cousins, all of whom had lived with Father for years. Father testified that the cousins were more like siblings to the children. Daughter has "great" friends, and Son also gets along well with other children at his school and had been starting to make more connections with other kids as time went on until shortly before the last hearing, when he began to grow more anxious. Mother argues that the children have friends and half- and step-siblings in South Carolina, as well, and that they have a good relationship with her, so this factor should be neutral or should favor Mother. But our standard of review requires that we consider the evidence in a light most favorable to the judgment, disregarding contrary evidence. *Clayton*, 387 S.W.3d at 445.

- "Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent." The trial court found that this factor favored neither Mother nor Father. Both Mother and Father have complied with the parenting plan, and when Mother was in Missouri for court appearances, Father allowed her to spend time with the children.

---

[3] Mother argues that there was no evidence that the children had a close relationship with Father, but the GAL's testimony supports this finding; she testified that the children cared about both parents and did not want to hurt either parent, which is why the GAL recommended that the children not be made to testify. The GAL also testified that, while Daughter did not mind moving to South Carolina, she mistakenly believed that Father would be moving with them. Finally, one of Son's teachers also testified that Son became noticeably anxious when Mother criticized Father during a conference. All of this testimony supports the inference that the children had a close and loving relationship with Father.

- "The child's adjustment to the child's home, school, and community." The trial court found that this factor favored Father. The children have always lived in Columbia, Missouri; have always attended school there; and have made friends there. Daughter is "thriving," has many friends, and does well in school. While Son's grades have suffered negative fluctuations, and Father has admittedly had problems with the administration of the children's school work and communication with teachers, there was also testimony in the record that it was not unusual for boys to have trouble adjusting to middle school. But more importantly, Son's grade school and middle school teachers both testified that Son's grades had improved once he began coming in before or after school for extra help, which Father facilitated. Father testified that he was making sure Son got to school early for help on Father's days off, and he began waking up earlier in the afternoons so that he could make sure Son had made good progress on his homework before Father had to go to work. In addition, Son's teacher stated that Son had been smiling more and making better connections with others until shortly before the last hearing. Finally, the court noted that Son's anxiety seemed to be related to Mother's criticism of Father.

Simply put, our standard of review does not allow this court to substitute its judgment as to the children's best interests for that of the trial court. Instead, as stated above, we do not disturb the trial court's judgment unless "we are firmly convinced it is erroneous and the award is against the child[ren]'s best interests and welfare." *Clayton*, 387 S.W.3d at 444 (internal quotation omitted). Father's continuing efforts in this case, along with Son's ultimate gradual improvement and Daughter's continuing success, do not leave us firmly convinced that the trial court's refusal to modify parenting time and residential designation is erroneous and against the children's best interests and welfare.

9

Point II is denied.

Mother's third point on appeal is that the trial court erred in refusing to let the children testify or to interview the children in camera about the circumstances existing in Father's home.

Generally speaking, a trial court has discretion over whether to allow children to testify as to their "custodial preference." *Kordonowy v. Kordonowy*, 887 S.W.2d 809, 811 (Mo. App. E.D. 1994). This is because a young child cannot be expected to "have a rational basis for a preference[,] and even subjecting him to expressing a preference may have serious adverse effects." *Id.* (internal quotation omitted). In this case, the trial court appointed the GAL for the express purpose of advising the court as to whether it would be in the best interest of the children, who were then ages nine and eleven, to testify or to be interviewed in camera; the GAL advised the court that the children should *not* be interviewed or made to testify. The GAL's recommendation that the children should not testify was based upon the GAL's observation that the children "did not want to say something wrong to hurt one of their parents." It was not an abuse of the trial court's discretion to refuse to hear from the children as to their custodial preference.

Mother argues on appeal, however, that not only did the trial court refuse to allow the children to testify (or to interview them in camera) about their custodial preference, but it also precluded them from testifying as to Father's activities. "A parent has a right to call upon his children, if competent, to testify in a child custody proceeding where such evidence is relevant." *Id.* at 812 (internal quotation omitted). This includes testimony about a parent's activities. *Id.* Mother claims that both Daughter and Son should have been allowed to testify as to Father's actions and to the circumstances at Father's home or that the trial court should have at least

interviewed them about these issues in camera despite the GAL's recommendation to the contrary.

A child under the age of ten is *incompetent* to testify if she is "incapable of receiving just impressions of the facts respecting which the child is examined, or of relating them truly." § 491.060. "A finding of competency is a matter within the trial court's discretion and will not be disturbed except upon a showing of clear abuse of that discretion." *State v. Lincoln*, 705 S.W.2d 576, 578 (Mo. App. E.D. 1986). Daughter, who was only nine years old at the time of the evidentiary hearings, had evidenced to the GAL that she was incompetent to testify under the above definition. The GAL testified that Daughter "has unrealistic expectations about what's going to happen. She told me she thought she was moving to South Carolina . . . [but] that dad was going to move there, too. And I think if she comes in and testified and that's not what happens, that she's going to think that that was because of something she said." The trial court's ruling reflects that the trial court found Daughter incompetent to testify even to the factual issues in this case. We find no abuse of discretion.

Son, who was eleven years old at the time of the hearing, would not have been incompetent to testify as to the factual matters solely by operation of section 491.060. A child may be found incompetent to testify, however, even to factual issues, where it is shown that his emotional state makes him so. *Kordonowy*, 887 S.W.2d at 813. In *Kordonowy*, the trial court did not allow the older child to testify, even as to his parents' activities, nor did the court interview him in camera. *Id.* at 812. Although the trial court did not find the testimony that the parent wanted to elicit from the child to be irrelevant, and the court did not expressly find that the child was incompetent, it did state that it would not be in the child's best interests to testify to the parents' activities. *Id.* The reasoning for the trial court's ruling in *Kordonowy* was that there

11

was evidence that the child suffered from emotional distress that was caused by or exacerbated by the litigation. *Id.* at 813.

In *Kordonowy*, the trial court stated in its findings of fact:

> The Court heard testimony from the parties that Scott had threatened to kill himself and was in counseling. Scott's counselor attributed Scott's problems to the parties placing Scott figuratively in the middle between the parties as a result of the parties['] anger towards each other.

*Id.* In affirming, the *Kordonowy* court concluded that the trial court had stated "an adequate basis for not allowing Scott to testify regarding his parents' activities." *Id.* In effect, the *Kordonowy* court concluded that the child's emotional distress rendered him incompetent to testify or even to be interviewed in camera as to his parents' activities in the proceedings.

In this respect, the present case is quite similar. In this case, there is ample evidence that Son's emotional state supported a conclusion by the trial court that Son was also incompetent to testify as to the factual issues in this case. The GAL testified that Son "would have the most trouble out of the two of them testifying, because he does not want to hurt either one of his parents and was very concerned about that." In addition, there was testimony from Son's teachers that he was sometimes reserved, nervous, or anxious, especially with respect to criticism of Father or Father's home. During a parent-teacher conference, when Mother began to criticize Father, Son began exhibiting facial tics, swallowing hard and blinking excessively. We note that the comments causing Son stress related to the activities and circumstances in Father's house, not to Son's custodial preference. There was also testimony that, in the thick of the litigation, Son at one time completed only one problem in fifty minutes on a math test because he "was scared of making a mistake." The GAL and the trial court both concluded that Son's emotional state was such that he should not be made to testify, and this determination was not an abuse of the trial court's discretion.

Point III is denied.

Mother's fourth point on appeal is that the trial court erred in releasing the GAL prior to the final hearing on Mother's motion to modify. "The objective in appointing a guardian ad litem is to make certain that the child's best interests are adequately represented and protected." *Keling v. Keling*, 155 S.W.3d 830, 833 (Mo. App. E.D. 2005). Here, the record demonstrates that the children's best interests were adequately represented and protected by the GAL.

The trial court appointed the GAL at the first hearing on Mother's motion to modify in response to Mother's claim that she should be allowed to call the children to testify on her behalf or at least for the trial court to conduct an in camera interview of the children. Neither party had demanded appointment of a GAL prior to this time, and there were no allegations that either child had suffered any mental or physical abuse. The trial court appointed the GAL to advise the court on whether the children should be allowed to testify. Other than the children's testimony, both Mother and Father had rested after the first evidentiary hearing. When the trial court reconvened to hear from the GAL as to her recommendation of the children's competency to testify, the trial court was not inclined to hear additional evidence, since both Mother and Father had otherwise rested. Thus, after the trial court heard the report from the GAL, the trial court released the GAL. Mother did not object and, thus, has failed to preserve this issue for appeal.

Mother subsequently moved the court to hear additional evidence regarding Son's continuing lack of progress in school. When the trial court agreed to allow the parties to present additional evidence on this issue, it *reappointed* the GAL, who had an additional opportunity to interview the children's medical providers and various teachers and administrators at Son's school before the GAL gave a second report. Accordingly, we fail to see how Mother has demonstrated that the children's interests were at all compromised by the trial court's release and

subsequent reappointment of the GAL to perform tasks assigned by the trial court and to report back to the trial court. Under these circumstances, the children's best interests were adequately represented and protected, and Mother's argument to the contrary is without merit.

Point IV is denied.

Mother's fifth and final point on appeal is that the trial court lacked authority to award Father $1,500 in attorney's fees. Because the initial judgment entered by the trial court on November 18, 2013, ordered each party to pay his or her own attorney's fees, and Father did not appeal this part of the judgment, Mother argues that the award as to attorney's fees became final and that the trial court lost jurisdiction over that aspect of the judgment. This argument ignores the procedural circumstances of this case. The trial court's subsequent award of $1,500 in attorney's fees to Father was *not* a reconsideration of its November 18, 2013 judgment. Instead, it was an award of attorney's fees for Father having to defend against what the trial court obviously believed were frivolous *post-judgment* motions filed by Mother. In order to successfully challenge the trial court's award of attorney's fees on appeal, Mother must show that the award was an abuse of discretion. *Patton v. Patton*, 973 S.W.2d 139, 147-48 (Mo. App. W.D. 1998). An abuse of discretion may only be demonstrated by showing that the attorney's fees award is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice. *Thill v. Thill*, 26 S.W.3d 199, 208 (Mo. App. W.D. 2000).

Mother's motion to modify and her subsequent intervention in Son's school progress were initially helpful. Father testified that prior to the mediation (which followed the motion to modify) he did not realize that his communications with the school and with Mother were inadequate. After the litigation began, Father made a more concerted effort to monitor Son's performance in school. Father's attention to Son's education improved. Father began making

14

sure that Son received extra help with work before or after school, and Father altered his sleep schedule to ensure that Son made progress on his homework before Father left for work. Due, at least in part, to Father's actions (in response to Mother's motion to modify), Son's grades began to improve to the point where he was passing all of his classes. This seems to explain why the trial court did not award attorney's fees as part of its original November 18 judgment.

However, the evidence presented at the final evidentiary hearing, which occurred at Mother's request to re-open the evidence, did not show, as Mother argued it would, that Son's academic problems were worsening or even remaining at a constant level of inadequacy. The trial court was thus well within its discretion to have concluded that Mother was unnecessarily prolonging the litigation, causing Father to incur additional legal fees. Mother was not ordered to pay all of Father's legal fees, only $1,500, which the trial court found to have been incurred due to the unnecessary proliferation of the litigation in this matter. We find no abuse of the trial court's discretion.

Point V is denied.

## Conclusion

The trial court's judgment is affirmed in all respects.

_____
Mark D. Pfeiffer, Judge

Cynthia L. Martin, Presiding Judge, and
Thomas H. Newton, Judge, concur.

15